**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**RICARDO GONZALEZ,**

**Petitioner,**

**v.**

**SECRETARY, DEPARTMENT OF CORRECTIONS and ATTORNEY GENERAL, STATE OF FLORIDA,**

**Respondents.**
________________________________/

**DEATH PENALTY CASE**
**CASE NO: 1:08-cv-22909-WPD**

**DEATH WARRANT SIGNED**
**EXECUTION SCHEDULED FOR DECEMBER 1, 2026 AT 6:00 P.M.**

## PETITIONER'S EXPEDITED MOTION FOR A LIMITED STAY OF EXECUTION UNDER 28 U.S.C. § 2251(a)(3)

On October 30, 2026, Governor Ron DeSantis signed a death warrant for Ricardo Gonzalez, scheduling his execution for December 1, 2026. The Florida Supreme Court set a two-week deadline for resolution of any state trial court claims made by Mr. Gonzalez in response to the warrant. The state trial court denied all relief on November 13, 2026.

The state trial court proceedings having concluded, Mr. Gonzalez now requests that this Court order a limited stay of execution, along with the appointment of counsel under 18 U.S.C. § 3599(a)(2), 18 U.S.C. § 3001 et seq., and the Sixth and Fourteenth Amendments to the United States Constitution, based on significant intellectual disability and disability-related competency concerns as to Mr. Gonzalez as well as other fundamental constitutional issues arising from the issuance of the death warrant, and to enable effective representation by postconviction counsel under 28 U.S.C. § 2251(a)(3) (providing for 90-day stay for appointment of counsel pursuant to 18 U.S.C. § 3599(a)(2)).

The facts relating to prior counsel's representation of Mr. Gonzalez support the instant motion. On November 3, 2026, the state trial court denied the request by Mr. Gonzalez's original state court postconviction counsel, Jeffrey Feiler, to be relieved from further participation in the case and to substitute new counsel qualified under the State of Florida's

requirements for appointed capital postconviction counsel. The state trial court appointed Richard C. Klugh, of undersigned counsel's firm, Klugh Wilson LLC, as co-counsel for Mr. Gonzalez for the state court postconviction proceedings. Although the undersigned counsel lack any prior familiarity with Mr. Gonzalez and had no prior participation in his case, they have been fully engaged in the matter since the state court appointment and have appeared and presented relevant filings, including a successive motion to vacate sentence under Fla. R. Crim. P. 3.851, which was denied on November 13, 2026 as was Mr. Gonzalez's requests for an evidentiary hearing and for production of medical and execution-protocol records.

Although attorney Jeffrey Feiler continued to serve as co-counsel in the state trial court, he did not serve as counsel or otherwise participate in the instant 28 U.S.C. § 2254 action. Instead, attorney Todd Scher filed the original action and was then appointed by this Court. Mr. Scher was permitted to withdraw from the case upon Petitioner's assertion of a request for conflict-free counsel to pursue his claim for relief under *Martinez v. Ryan*, 566 U.S. 1 (2012). Mr. Scher's motion to withdraw was granted, and this Court appointed Philip Horowitz to replace Mr. Scher. ECF No. 34. Mr. Horowitz, who has not yet made any filings in the case, has consented to substitution by undersigned counsel based on the multiple subsequent developments in the case, the urgency of pending applications for relief from the death warrant, and undersigned counsel's status as counsel in the state court proceedings. This motion is filed with a request to appoint counsel and relieve Mr. Horowitz of further responsibility in the case.

Because claims litigated by Petitioner in the state court are interrelated with the yet-to-be-litigated *Martinez v. Ryan* claim for which the Court appointed counsel for Petitioner, and because there remains a need for appointed counsel to investigate, research, and pursue federal claims now available to Mr. Gonzalez, including those relating to competency and intellectual disability that have become ripe or timely since the prior appointment of counsel, there is a need

for substitution of counsel who are actively working on the case, including to address substantial and material developments in federal death penalty law having a direct bearing on the claims.

In the previous proceedings in this case, Mr. Gonzalez's initial appointed federal counsel (Todd Scher) filed an untimely 28 U.S.C. § 2254 habeas petition, resulting in the petition's dismissal as time-barred. ECF No. 15. Mr. Scher, however, labored under a conflict of interest in representing Mr. Gonzalez in both state and federal court, because he also represented Mr. Gonzalez's co-defendant Leonard Franqui in a separate case and ultimately in this same case. Mr. Franqui's accusations against Mr. Gonzalez, improperly admitted against Mr. Gonzalez at the original trial, were the basis for a remand for resentencing, *Gonzalez v. State*, 786 So.2d 559 (Fla. 2001), and the two defendants occupy antagonistic positions (indeed, gave directly conflicting confessions) that made a conflict ultimately apparent. This conflict was a basis for Mr. Gonzalez's pro se motion, ECF No. 29, submitted from prison on March 19, 2003, seeking the appointment of conflict-free counsel to litigate his claim for relief under *Martinez v. Ryan*. This Court granted Mr. Scher's motion to withdraw and appointed new counsel, Phillip Horowitz, on April 17, 2013. *See* ECF No. 34. However, to date the *Martinez v. Ryan* claim of ineffective assistance of counsel in investigating, presenting, and preserving Mr. Gonzalez's postconviction claims—including based on Mr. Scher's conflicting duty of loyalty to Mr. Franqui that competed with his duty of loyalty to Mr. Gonzalez—has not yet been presented by counsel; and the death-eligibility claims in the federal petition that this Court ruled were not yet ripe likewise have not yet been presented. Given the absence of investigation or filing of any other pleadings or claims for relief in this matter in more than a decade and given that the death warrant is set to be executed in just over two weeks, Mr. Gonzalez's need for active federal counsel has become acute. His prior federal claims were filed by an attorney who labored under a severe conflict-of-interest and whose largely undisputed ineffectiveness in failing to timely raise habeas claims also is now apparent on the record. Mr. Gonzalez has never had effective

representation in pursuing relevant constitutional claims. This is precisely a situation that warrants appointment of counsel and a limited stay under 28 U.S.C. § 2251(a)(3).

Since the appointment of undersigned counsel's firm last week, counsel rapidly reviewed and assessed Mr. Gonzalez's case from a limited record. That review casts serious doubt on the constitutionality of Mr. Gonzalez's conviction and death sentence. A stay of execution is now necessary to ensure that Mr. Gonzalez is afforded the right to conflict-free counsel who has the opportunity to meaningfully research, investigate, and present potentially meritorious claims for federal relief. Through no fault of his own, Mr. Gonzalez is now represented in large measure by counsel appointed to his state case just over a week ago. Undersigned counsel, specifically Jenny Wilson of Klugh Wilson LLC (who is a member of the CJA panel), is requesting immediate appointment to this federal case as well as a stay of execution to remedy the errors and omissions made by prior counsel and to litigate the remaining potentially meritorious claims effectively. Therefore, Petitioner hereby moves for a limited 90-day stay of execution under 28 U.S.C. § 2251(a)(3) and *McFarland v. Scott,* 512 U.S. 849 (1994).

## I. Background

Ricardo Gonzalez was 21 years old when he participated in a robbery that led to his sentence of death. Mr. Gonzalez did not plan the robbery; he did not bring a gun to the robbery, but was handed one. He fired the gun once, after shots had already been fired in the encounter with an officer working as security for the outdoor transfer of bank funds; Mr. Gonzalez aimed low, trying not to kill anyone, and he thought the victim was wounded in the lower leg and not in mortal danger. He was wrong, and his firing of the gun was found to be the cause of death. After a jury trial where the defense presented no evidence or witnesses, Mr. Gonzalez was convicted of first-degree felony murder in 1994. He had no significant criminal history. No jury or court ever found that he (or anyone else) intended to kill in this tragedy.

Neither of the two penalty-phase juries in this case was unanimous about a death sentence for Petitioner. The first jury recommended death by bare majority of seven to five. *Gonzalez v. State*, 700 So. 2d 1217, 1218 (Fla. 1997). The Florida Supreme Court vacated Mr. Gonzalez's original death sentence because a codefendant's confession had been wrongly admitted against him. *Gonzalez v. State*, 700 So. 2d 1217, 1219 (Fla. 1997)—the confession was given by Leonard Franqui, the same co-defendant whom Mr. Scher, prior counsel in this matter, also represented. On remand, a second penalty phase jury recommended death by eight to four, making a total of nine death-qualified jurors who have voted against the death penalty for Petitioner. Mr. Gonzalez' sentence of death was affirmed on appeal. *Gonzalez v. State*, 786 So. 2d 559 (Fla. 2001). However, the sentencing court found substantial mitigation. Mr. Gonzalez has brain damage from a severe boxing injury; he suffered his first concussion at age 10. which was accompanied by loss of consciousness; he sustained *repeated* severe head traumas during his boxing career; and he was hit in the head with a steel beam at age 19 while working in a factory in Puerto Rico. An MRI showed two cavities in the middle of his brain filled with cerebrospinal fluid, which a neurologist diagnosed as pugilistic encephalopathy (now more commonly known as "CTE"). He has a learning disability and was held back in grade school and has considerably below-average intelligence, raising substantial concerns about intellectual disability because in the 1990s, a test showed his IQ score at 80; he scored 75 at age 12. *Id.* at 563-66. Mr. Gonzalez has not received a neurological evaluation or an MRI since the 1990s.

On October 17, 2001, state private registry counsel Jeffrey Feiler was appointed to represent Mr. Gonzalez in state postconviction proceedings. On July 19, 2002, twenty-one days before the AEDPA statute of limitations was set to expire, Mr. Gonzalez, through counsel, filed his initial state postconviction motion. *Gonzalez v. Secretary, Fl. Dept. of Corr.*, 629 F.3d 1219, 1220 (11th Cir. 2011). Mr. Gonzalez's counsel acknowledged that he filed the incomplete motion in order to toll the federal statute of limitations. *Id.* The State moved to strike the motion

on the basis that it was a "shell motion" and not fully-pled. The court granted the motion to strike on August 13, 2002. The Florida Supreme Court then granted Mr. Gonzalez leave to amend, and he filed an amended postconviction motion on March 10, 2003, after the AEDPA deadline had expired. The trial court ultimately denied Gonzalez's amended motion on the merits and the Florida Supreme Court affirmed. *Gonzalez v. State*, 990 So. 2d 1017 (Fla. 2008).

On October 20, 2008, twenty-one days after the Florida Supreme Court's denial, Mr. Gonzalez filed a petition under 28 U.S.C. § 2254, prepared by Mr. Scher. Doc. 1. This Court found that Mr. Gonzalez's "shell" motion was not properly filed in state court and thus did not toll the AEDPA statute of limitations. The Court dismissed the habeas petition as time-barred in an order dated September 28, 2009. ECF No. 15. In its Order, this Court specifically noted that equitable tolling, which was only first asserted in the reply brief with mere "conclusory allegations," contained "no allegations of bad faith, dishonest, divided loyalty or mental impairment on behalf of post conviction counsel." Doc.15, at 8.

This Court granted a certificate of appealability on three issues: 1) whether Gonzalez's federal habeas petition was timely; 2) whether the admission of Gonzalez's co-defendants' confessions at his trial was harmful with respect to his guilt; and 3) whether the trial court erroneously denied two of his peremptory challenges. *Gonzalez v. Secretary, Fl. Dept. of Corr.*, 629 F.3d 1219, 1220. The Eleventh Circuit ultimately affirmed the denial of the federal habeas petition, finding the petition untimely and alternatively denying the claims on the merits. *Id.*

Mr. Gonzalez's federal postconviction counsel, Todd Scher, was working under a divided interest at the time of his federal representation of Mr. Gonzalez. Mr. Scher began representing Mr. Gonzalez's co-defendant Leonardo Franqui[1] in state postconviction in May 2005 in a separate capital case. Mr. Scher remains counsel for Mr. Franqui in that case. However, Mr. Scher litigated Mr. Gonzalez's habeas petition at the same time he represented Mr. Gonzalez's

[1] Mr. Franqui is on death row for two separate cases, including this one where he was a codefendant. *See* 804 So. 2d 1185 (Fla. 2001) (codefendant case); 699 So. 2d 1312 (Fla. 1997).

co-defendant in that separate case. Mr. Scher owed a duty of loyalty to Mr. Franqui that conflicted with the duty of loyalty he owed to Mr. Gonzalez in his federal habeas case. Notably, in 2015, Mr. Scher also represented Mr. Franqui in the same case where he was Mr. Gonzalez's co-defendant, when Mr. Franqui's two capital cases were consolidated on appeal. *See* Florida Supreme Court cases SC2015-1630 and SC2015-1441 (successive postconviction appeals).

On March 30, 2012, the United States Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), establishing a gateway for procedural default of ineffective assistance of trial counsel (IATC) claims based on ineffective assistance of state postconviction counsel. Mr. Gonzalez filed a *pro se* motion requesting conflict-free counsel pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), within one year of the decision in *Martinez*. ECF No. 29. This Court then granted Mr. Scher's motion to withdraw and appointed Philip Horowitz as new counsel on April 17, 2013. *See* ECF No. 34. Mr. Horowitz never made any filing in this matter, and given his role, never obtained records or conducted any investigation in the case. No activity has occurred on the docket since Mr. Horowitz's appointment thirteen years ago.

On January 24, 2017, Mr. Feiler filed a successive state postconviction motion based on *Hurst v. Florida*, 202 So. 3d 40 (Fla. 2016) which was denied by the trial court and affirmed on appeal. *Gonzalez v. State*, 240 So. 3d 629 (Fla. 2018). No action was taken by counsel in this Court on that matter. On October 23, 2025, Mr. Gonzalez filed a *pro se* successive postconviction motion based on newly discovered evidence in which he noted Mr. Horowitz's name in the motion. During a status hearing, Mr. Horowitz appeared and informed the court that he represented Mr. Gonzalez years ago in federal court and was no longer his attorney. Mr. Feiler, who was still attorney of record in state court, did not adopt the *pro se* motion which was then stricken by the trial court (attached as Exhibit 1).

On the same day as the signing of Mr. Gonzalez's death warrant, state postconviction counsel, Jeffrey Feiler, filed an emergency motion for immediate appointment of qualified

capital postconviction counsel. In the motion, Mr. Feiler stated that he presently does not meet all statutory qualifications for lead counsel representation of capital postconviction cases and sought to withdraw from representation. He stated at a subsequent hearing that the client's interests would be better served by having CCRC, the state agency tasked with handling such matters, appointed. The CCRC-South has a conflict; and both the CCRC-North and CCRC-Middle refused to take the appointment due to the condensed time frame. The state court thus denied this request. Richard Klugh, of Klugh Wilson LLC, presently co-counsel in this case as of November 3, 2026, had no pre-death warrant familiarity with Mr. Gonzalez or his case.

## II. Mr. Gonzalez's Execution Should Be Stayed For 90 Days To Allow for Meaningful Conflict-Free Representation. This Court Has Discretion To Grant a Limited Stay of Mr. Gonzalez's Execution Pursuant to 28 U.S.C. § 2251(a)(3) and/or *McFarland v. Scott.*

Federal law permits this Court to stay Mr. Gonzalez's execution for up to 90 days based on the appointment of new counsel. Undersigned counsel has filed a motion for appointment to this case simultaneously with this motion for stay of execution. Because undersigned counsel needs additional time to review, investigate, and prepare potentially meritorious claims in federal court, while concurrently litigating the truncated state warrant proceedings, this Court can and should exercise its statutory authority to stay Mr. Gonzalez's execution in order to allow for meaningful conflict-free federal representation. Mr. Gonzalez has been on death row since 1998, and has not had meaningful conflict-free federal representation.

This Court has discretion to stay Mr. Gonzalez's execution for up to 90 days after the appointment of new federal habeas counsel. *See* 28 U.S.C. § 2251(a)(3). Once the petitioner applies for appointment of counsel pursuant to 18 U.S.C. § 3599(a)(2), a district court that would have jurisdiction to entertain a habeas corpus application regarding that sentence "may stay execution of the sentence of death, but such stay shall terminate not later than 90 days after counsel is appointed." 28 U.S.C. § 2251(a)(3). As the Eleventh Circuit has recognized, this

statute "explicitly authoriz[es] [a federal] court to grant [a] stay to allow for appointment of counsel under § 3599(a)(2)." *Bowles v. DeSantis*, 934 F.3d 1230, 1243 (11th Cir. 2019).

Section 2251(a)(3) applies to Mr. Gonzalez's case. Undersigned counsel filed a motion requesting appointment as federal counsel. Undersigned counsel seeks to investigate the grounds for filing a motion for relief from judgment based upon a defect in the integrity of the proceeding, among other potential claims and avenues for relief. This motion will relate to an application for writ of habeas corpus over which this Court has jurisdiction.[2] As such, § 2251(a)(3) empowers the Court to stay execution for up to 90 days from the date of appointment of counsel. *See Gutierrez v. Davis*, Slip Op., No. 18-70028 (5th Cir. 2018) (attached as Exhibit 2) (holding "the district court clearly had authority to enter a stay under Section 2251(a)(3)").

In addition, whether to grant a stay under 28 U.S.C. § 2251(a)(3) is not discretionary if a petitioner's right to federally appointed counsel will be violated unless the district court stays his execution. *McFarland v. Scott*, 512 U.S. 849, 858-59 (1994). Under 18 U.S.C. § 3599(e), capitally-sentenced prisoners have the right to assistance of counsel "throughout every . . . stage of available judicial proceedings . . . including all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." § 3599(e). The plain language of the statute reflects that the right should be construed robustly. Interpreting the predecessor statute to § 3599, the Supreme Court remarked, "Congress' provision of a right to counsel . . . reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." *McFarland*, 512 U.S. at 855 (discussing 21 U.S.C. § 848(q)). "By providing indigent capital defendants with a mandatory right to

---

[2] While section 2251(a)(l) specifies that a court may issue a stay only when "a habeas corpus is pending," and section 2251(a)(2) clarifies that "a habeas corpus proceeding is not pending until the application is filed," section 2251(a)(3) in contrast allows for a ninety-day stay to issue after the appointment of counsel. 28 U.S.C. § 2251(a)(3).

qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *Christeson v. Roper*, 574 U.S. 373 (2015). In *McFarland*, the Supreme Court held that a stay of execution is warranted to ensure that a petitioner's right to counsel is respected, regardless of whether an application for writ of habeas corpus is pending. Thus, *McFarland* has instructed federal courts to grant a stay when a petitioner has insufficient time to meaningfully exercise his right to counsel because of an impending execution.

The right to counsel applies to "all available post-conviction process," not merely the initial federal habeas corpus proceedings. 18 U.S.C. § 3599(e). This includes proceedings to reopen under Rule 60(b), second-in-time petitions including those brought under *Ford v. Wainwright*, 477 U.S. 399 (1986), motions for stays of execution, applications to file a second or successive petition, petitions for executive clemency, and original writs in the United States Supreme Court. The right to counsel does not merely mean filing a pleading on the petitioner's behalf; instead, the right to counsel "necessarily includes the right for that counsel *meaningfully to research and present* a defendant's habeas claims." *McFarland*, 512 U.S. at 858 (emphasis added). Otherwise, the right to counsel would be an "empty promise." *In re Hearn*, 376 F.3d 447, 457 (5th Cir. 2004). Accordingly, "the relief recognized in *McFarland*" is *not* "limited to those capital prisoners who have not yet filed an initial habeas petition"; "no language in the Supreme Court's opinion limits its holding to *initial petitions*." *Id.* (emphasis added).

In cases where an execution date is set (as in the present case), the statutory right to quality legal representation has at times come into conflict with a State's interest in carrying out a scheduled execution. The United States Supreme Court and other federal courts have held that the right to counsel trumps the State's interest in a speedy execution. For example, in *McFarland*, the petitioner sought the appointment of counsel in federal court five days before his scheduled execution, having failed to secure a stay or counsel from the state courts, and the

United States Supreme Court issued a stay after it was denied by the lower federal courts. *McFarland*, 512 U.S. at 852. The "appointment [of counsel] would have been meaningless unless McFarland's execution also was stayed." *Id.* at 857. Likewise, in *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016), applying the precepts of *McFarland* in interpreting and applying the mandate of § 3599, the Fifth Circuit reversed the district court's denial of Battaglia's motion for the appointment of counsel and granted him a stay of execution. *Battaglia*, 824 F.3d at 471. Battaglia had filed his motion twenty days before his scheduled execution, seeking counsel to investigate the possibility of a Ford claim that he was incompetent to be executed. *Id.*

In *Christeson v. Roper*, the United States Supreme Court also stayed an execution under circumstances similar to Mr. Gonzalez's case without a pending habeas petition. *See* 574 U.S. 373 (2015) (per curiam). The petitioner sought new counsel to replace conflicted counsel in order to file a motion for relief from judgment. *Id.* at 375. The Court granted a stay of execution while considering whether the lower court had denied the petitioner the right to meaningful assistance of counsel in post-judgment proceedings. The petitioner had sought appointment of conflict-free counsel, as the only remaining avenues for relief in his case would require his current counsel to "denigrate their own performance," which created a clear conflict of interest. *Id.* at 378. The court explained that "[c]ounsel cannot reasonably be expected to make such an argument." *Id.* The Court determined that substitution of counsel was appropriate, despite the "host of procedural obstacles" the petitioner faced. *Id.* at 380.

District courts have granted motions to stay execution under circumstances similar to Mr. Gonzalez's case in cases with similar procedural postures. *See, e.g.*, *Dailey v. Secretary, Fl. Dept. of Corr.*, Case No. 8:07-cv-1897, Doc. 81 (M.D. Fla. Oct. 23, 2019) (concluding that "it is in the interests of a just and fair system for Mr. Dailey's new counsel to have the statutory grant of time to review and present habeas issues to this Court") (attached as Exhibit 3); *Gutierrez v. Davis*, Slip Op., No. 18-70028 (5th Cir. 2018) (concluding district court did not abuse its

discretion by granting a stay at the time of appointment of counsel, which "serves the purpose of allowing counsel time to determine if an application for habeas corpus relief is appropriate"); *Ramirez v. Davis*, 675 F. App'x 478 (5th Cir. 2017) ("Reviewing the grant of stay for abuse of discretion, we find no reversible error on the part of the district court. . . . Moreover, the district court did not lack jurisdiction under these circumstances to grant a stay."); *Johnson v. Davis*, No. 4:11-cv-2466, Doc. 84 (S.D. Tex. Apr. 30, 2019) ("The Court appointed supplemental counsel on February 5, 2019. Section 2251(a)(3) then allowed for a stay of execution until May 6, 2019.") (attached as Exhibit 4).

For example, in *Dailey*, after Mr. Dailey's execution date was set, his federal counsel moved to withdraw due to alleged conflicts of interest. The district court appointed conflict-free counsel "to provide Mr. Dailey with representation in any federal proceedings related to his first-degree murder conviction and death sentence." *Dailey v. Secretary, Fl. Dept. of Corr.*, Case No. 8:07-cv-1897, Doc. 81, at 2 (M.D. Fla. Oct. 23, 2019). Notably, Mr. Dailey, who had been on death row for over 30 years, had already engaged in a full round of federal habeas litigation, and the State had argued that any potential petition would be meritless and/or procedurally barred. Nevertheless, the district court held:

> This Court has "jurisdiction to *entertain* a habeas corpus application regarding that sentence." 28 U.S.C. § 2251(a)(3) (emphasis added). Whether Dailey's potential habeas application will invoke this Court's jurisdiction depends on what it contains. This Court likely has jurisdiction to entertain habeas corpus petitions that are not successive. *See Boyd v. United States*, 754 F.3d 1298, 1301 (11th Cir. 2014) ("[T]he phrase second or successive is not self-defining and it does not refer to all habeas petitions filed second or successive in time."). And, at a minimum, this Court would be the court with jurisdiction to entertain a second or successive habeas corpus petition should it be permitted by the Eleventh Circuit Court of Appeals. *See* 28 U.S.C. § 2244(b)(3)(A). As such, this Court has jurisdiction to entertain habeas corpus applications by Mr. Dailey. And, since Mr. Dailey's counsel—CHU—was appointed pursuant to 18 U.S.C. 3599(a)(3) and this Court may have jurisdiction to entertain a habeas corpus application should one be filed, this Court may stay execution for up to 90 days. 28 U.S.C. § 2251(a)(3).

*Dailey*, Case No. 8:07-cv-1897, Doc. 81, at 3-4 (M.D. Fla. Oct. 23, 2019). While the Court took "no position on any potential habeas application that Dailey's new counsel might file . . . —or even if such application would be reviewable on its merits without approval from the Eleventh Circuit Court of Appeals," it held that "it is in the interests of a just and fair system for Mr. Dailey's new counsel to have the statutory grant of time to review and present habeas issues to this Court." *Id.* at 4. In doing so, the court noted that the limited stay "to ensure that Dailey's right to counsel is meaningful is scant prejudice to Respondents." *Id.*

Mr. Gonzalez's case is even more acute because he never had a full review on the merits of his federal claims, he was represented by conflicted counsel in federal court, he has effectively been without federal representation since 2013, and his state postconviction counsel was not qualified to represent him in capital postconviction proceedings. Thus, it is vital not only that Mr. Gonzalez receive counsel in these proceedings, but that such representation be *meaningful* with the grant of a stay "in the interests of a fair and just system." *See Dailey*, Case No. 8:07-cv-1897, Doc. 81, at 4 (M.D. Fla. Oct. 23, 2019).

In *Johnson*, the district court found that the "circumstances suggest a stay would be appropriate" because the court "appointed supplemental counsel only a short time before Johnson's execution date" and new counsel "identified several previously undeveloped issues for which *Martinez* may provide a vehicle for federal consideration of their merits." *Johnson v. Davis*, No. 4:11-cv-2466, Doc. 84, at 8. Indeed, the court found the "limited time since the appointment of counsel has not provided a full opportunity for litigating undeveloped issues." Moreover, the Court found the conflict issue in *Johnson* to raise "troubling concerns" needing "resolution to preserve his rights before execution." *Id.* The need for a stay is even more appropriate in Mr. Gonzalez's case because undersigned counsel is seeking to be Mr. Gonzalez's

new sole federal counsel, whereas in *Johnson*, the stay was ordered attendant to an appointment of *supplemental* counsel. This Court should accordingly grant Mr. Gonzalez a similar stay.

Importantly, Mr. Gonzalez was deprived of conflict-free and thus ineffective counsel throughout his initial federal habeas proceeding. Having never been relieved of ineffective counsel, Mr. Gonzalez has had no opportunity to investigate and identify ineffective assistance of trial counsel claims that were never presented in state or federal court due to ineffective state postconviction representation in conjunction with conflicted federal representation. Mr. Gonzalez timely requested appointment of conflict-free counsel in 2013, within one year of *Martinez*, but his appointed counsel did not proceed in the matter. Should conflict-free counsel discover such claims, Mr. Gonzalez may have viable avenues to obtain relief. Mr. Gonzalez seeks a stay to make representation in that endeavor meaningful. *See, e.g.*, *McFarland*, 512 U.S. at 858. Accordingly, this Court has the power to issue a stay pursuant to § 2251(a)(3) and *McFarland*, even after habeas has been completed and an execution nears. *See, e.g.*, *Battaglia*, 824 F.3d at 475.[3]

**A. Undersigned Counsel's Review of the Available Materials and Records in this Case Has Revealed Numerous Viable Claims for Relief Needing Further Investigation.**

Since its state appointment on November 3, 2026, undersigned counsel has worked diligently and rapidly to acquire all available records in this case in order to provide effective

[3] The 4-part stay test under *Nken v. Holder*, 556 U.S. 418 (2009), does not apply to stays pursuant to section 2251(a)(3), because the statute's plain language controls. See *Johnson v. Davis*, No. 4:11-cv-2466, Doc. 84 (S.D. Tex. Apr. 30, 2019) (finding section 2251(a)(3) "allows for a stay without relying on the *McFarland* or *Nken* standards"). *But see Woods v. Warden, Holman Corr.* Facility, 952 F.3d 1251 (11th Cir. 2020). *Woods* is factually distinguishable from this case. The federal court held that Woods was not entitled to appointment of substitution counsel because he already had federal counsel who was actively representing him. Thus, the court in *Woods* did not consider, and could not have considered, a stay under 28 U.S.C. § 2251(a)(3), which relies on the appointment of new counsel. Thus, when the Court considered whether Woods was entitled to a stay, it did so under 28 U.S.C. § 2251 generally.

assistance of counsel under the ABA Guidelines. However, this process is not yet complete; undersigned has identified records still not in its possession and has been working diligently to obtain these materials through all available avenues, including through state and/or federal public records requests, obtaining records from prior counsel, and additional investigation. The records in this case are massive and involve records from an original criminal trial, two sentencing proceedings, a direct appeal, three state postconviction proceedings, and a federal habeas proceeding. Additional time is needed for undersigned counsel to provide Mr. Gonzalez with effective assistance of federal counsel.

Nevertheless, an initial review of the available materials obtained thus far has brought to light numerous viable claims for relief. Further investigation, records review, and development are required before the identified claims can be substantiated with sufficient evidence to prevail.[4] If and when undersigned counsel presents these claims depends on additional time necessary for investigation and development. Additionally, more claims may arise as undersigned counsel continues its work. With that disclaimer, a brief summary of the potential claims identified for further development are listed below:

- Mr. Gonzalez is intellectually disabled, which makes him categorically ineligible for execution, under the Eighth and Fourteenth Amendments to the United States Constitution under *Atkins v. Virginia*, 536 U.S. 304 (2002), *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 586 U.S. 133 (2019).

[4] A merits review is not necessary under § 2251(a)(3); in fact, it would be counterintuitive given the new appointment of counsel and additional development necessary to make the appointment of counsel meaningful. *See Battaglia*, 824 F.3d at 475 (where petitioner had just received new counsel under § 3599, "a declaration that the [contemplated claim for relief] is unlikely to succeed" would be "premature"); *Dailey*, Case No. 8:07-cv-1897, Doc. 81 (M.D. Fla. Oct. 23, 2019) (taking "no position on any potential habeas application that Dailey's new counsel might file"); *Johnson v. Davis*, No. 4:11-cv-2466, Doc. 84 (S.D. Tex. Apr. 30, 2019) (finding "because supplemental counsel has had little time to investigate potential issues, and conflict has apparently compromised Johnson's legal representation, it would be premature to decide whether Johnson may succeed in any future ground for relief").

- Given Mr. Gonzalez's severe brain damage, which progresses with age, he may be incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986); *Panetti v. Quarterman*, 551 U.S. 930 (2007); and *Madison v. Alabama*, 586 U.S. 265 (2019). Counsel has substantial concerns about Mr. Gonzalez's competency given the brain damage and the associated problems he has with memory and comprehension, which have been observed by counsel.

- Trial and postconviction counsel rendered ineffective assistance of counsel in investigating, presenting available evidence, and litigating Mr. Gonzalez's intellectual disability under *Atkins v. Virginia*, 536 U.S. 304 (2002), *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 586 U.S. 133 (2019).

- Mr. Gonzalez has profound neurological disability, severe structural brain damage, and associated cognitive impairment, and his execution would constitute cruel and unusual punishment and violate the evolving standards of decency under the Eighth and Fourteenth Amendments. This is particularly true given the fact that Mr. Gonzalez was only 21 when the offense occurred; that no one in the car intended to kill anyone; and that Mr. Gonzalez took active steps to *avoid* killing anyone by shooting low.

- The courts evaluating the Eighth Amendment question in this case failed to rigorously apply or interpret *Tison v. Arizona*, 481 U.S. 137 (1987), as applicable here to the affirmative intent *not* to kill and the absence of an intended killing by *any* person in this case, factors which independently require additional analysis under *Tison*, particularly in light of the reduced capacity of the defendant. Relatedly, the *Tison* standard is unconstitutionally vague both facially and as applied in this case, especially in the absence of a unanimous jury verdict. *See Johnson v. United States*, 576 U.S. 597 (2015).

- Mr. Gonzalez was denied due process when the state postconviction court denied his Emergency Motion for Limited Psychological Testing, under the Eighth and Fourteenth Amendments.

- The state courts have denied Mr. Gonzalez the right to effective assistance of counsel and access to the courts by appointing conflicted and/or incompetent counsel (including in failing to comply with the federal habeas time bar) and failing to ensure that counsel understood that the representation continues through execution, in violation of the First, Sixth, Eighth, and Fourteenth Amendments.

- Mr. Gonzalez's federal constitutional rights to procedural due process, the access to the courts, effective counsel, and equal protection have been violated by Florida's post-warrant public records procedures, in violation of the First, Sixth, Eighth, and Fourteenth Amendments. *See, e.g.*, *District Attorney's Office v. Osborne*, 557 U.S. 52 (2009); *Mathews v. Eldridge*, 424 U.S. 319 (1976), *Christopher v. Harbury*, 536 U.S.

403 (2002); *Ford v. Wainwright*, 477 U.S. 399 (1986); *United States v. Cronic*, 466 U.S. 648 (1984).

- Executing Mr. Gonzalez, who was 21 at the time of the crime, violates the evolving standards of decency under the Eighth and Fourteenth Amendments. *Roper v. Simmons*, 543 U.S. 551 (2005); *Miller v. Alabama*, 567 U.S. 460 (2012).

- Mr. Gonzalez lacked the intent to kill, and the courts failed to rigorously apply *Enmund v. Florida*, 458 U.S. 782 (1982) and *Tison v. Arizona*, 481 U.S. 137 (1987).

- Mr. Gonzalez's execution would violate the Sixth, Eighth, and Fourteenth Amendments because a 21-year-old with severe brain damage and intellectual disability, who never intended to kill and whom no jury ever unanimously found culpable enough to die, lacks the extreme culpability required by the death penalty.

- Executing Mr. Gonzalez on a jury's vote of 8-4 violates the Fifth, Sixth and Eighth Amendments and the evolving standards of decency and the requirement of a unanimous jury verdict.

- Mr. Gonzalez is actually innocent of the death penalty, and his execution would violate the Fifth, Eighth, and Fourteenth Amendments.

- Newly discovered evidence establishes Mr. Gonzalez's actual innocence of the death penalty under the Eighth and Fourteenth Amendments.

- Newly discovered evidence, including recantations and evidence of impeachment of critical witnesses, establishes the unreliability of Mr. Gonzalez's conviction and death sentence under the Eighth and Fourteenth Amendments.

- Cumulative errors in Mr. Gonzalez's trial and sentencing makes Mr. Gonzalez's execution unconstitutional.

- Florida state law unconstitutionally deprives Mr. Gonzalez of his right to counsel under the Sixth, Eighth, and Fourteenth Amendments by failing to provide a valid procedural mechanism for Mr. Gonzalez to identify and/or remove ineffective attorneys and/or attorneys laboring under a conflict of interest, without waiving his right to postconviction relief.

- Florida's procedures unconstitutionally restrict attorneys from interviewing trial jurors in violation of the First, Eighth, and Fourteenth Amendments.

- The Governor's arbitrary selection of Mr. Gonzalez for execution when there are cases that are more aggravated and less mitigated was arbitrary and discriminatory under the Eighth and Fourteenth Amendments.

- Mr. Gonzelez's death sentence is disproportionate to similar cases, and selection of his case for execution violates equal protection, in violation of the Eighth and Fourteenth Amendments.
- Florida's execution of Mr. Gonzalez would be so arbitrary as to violate the Eighth and Fourteenth Amendments to the United States Constitution.

- Florida's state clemency system is so arbitrary as to violate due process under the Eighth, and Fourteenth Amendments. *See Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272 (1998).

- The makeup of Florida's clemency board, by including the adverse party in capital postconviction proceedings, violates due process. *See Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272 (1998).

- Florida's mandated use of non-death-qualified counsel paid in a lump sum by the Florida Commission on Offender Review, without any access to funds for investigation or experts, while at the same time prohibiting established counsel from participating in the clemency process, violates Due Process and the right to effective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments. *See Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272 (1998).

- Specific defects in Mr. Gonzalez's clemency proceedings violate due process under the Eighth and Fourteenth Amendments. *See Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272 (1998).

- Florida's secrecy laws prohibiting Mr. Gonzalez's access to his own clemency materials violates the First, Sixth, Eighth, and Fourteenth Amendments.

- Florida's Lethal Injection Protocol presents an unconstitutional risk of pain when compared with a known and available alternative under *Glossip v. Gross*, 576 U.S. 863 (2015) and *Bucklew v. Precythe*, 587 U.S. 119 (2019).

- Florida's Lethal Injection Protocol presents an unconstitutional risk of pain as applied to Mr. Gonzalez's unique medical conditions (including extreme allergic reactions documented by the Florida Department of Corrections, including a very severe event suffered by Petition last year and a spectrum of drug allergies that complicate the use of rescue drugs as well), when compared with a known and available alternative under *Glossip v. Gross*, 576 U.S. 863 (2015) and *Bucklew v. Precythe*, 587 U.S. 119 (2019).

- Florida's Lethal Injection Protocol using three-drugs, including a paralytic, violates the evolving standards of decency under the Eighth Amendment.

- Florida state officials will violate Mr. Gonzalez's constitutional rights to access to the courts and his First, Sixth, Eighth, and Fourteenth Amendment rights by prohibiting

Mr. Gonzalez from having two attorneys present during his execution, by denying attorney access to a phone during the execution, and by denying an objective witness to observe the insertion of the IV line that will be used to administer the lethal drugs.

- Florida violates Mr. Gonzalez's constitutional rights by repeatedly failing to follow its own Lethal Injection Protocol and the Lethal Injection statutes.

- Florida's protocol violates Mr. Gonzalez's First Amendment rights as a devout Catholic by failing to permit his spiritual advisor into the death chamber, by failing to permit his spiritual advisor to administer Last Rites in the death chamber, and by failing to permit his spiritual advisor to lay hands and pray out loud during the pendency of the execution.

- Newly discovered evidence of actual innocence, including potential statements by Mr. Gonzalez's co-defendants needing further investigation, may demonstrate that Mr. Gonzalez had no prior knowledge of the plan to rob the bank and was not a participant in the robbery or murder, and his conviction and execution would violate the Eighth and Fourteenth Amendments. *See Herrera v. Collins*, 506 U.S. 390.

- The Florida court's refusal to consider Mr. Gonzalez's pro se petition introducing evidence of actual innocence, without adoption by his unqualified postconviction attorney, violated Mr. Gonzalez's right to access of the courts, effective assistance of counsel, and due process under the First, Sixth, Eighth, and Fourteenth Amendments.

- Counsel needs time to investigate potential *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959) claims.

- Mr. Gonzalez's conviction is unconstitutional due to ineffective assistance of trial counsel during the trial phase, *see Strickland v. Washington*, 466 U.S. 688 (1984).

- Mr. Gonzalez's sentence is unconstitutional due to ineffective assistance of trial counsel during the penalty phase, *see Strickland v. Washington*, 466 U.S. 688 (1984); *Williams v. Taylor*, 529 U.S. 362 (2000).

Moreover, viable vehicles exist in the federal courts, including this Court, to litigate these potentially meritorious claims. Those vehicles may include but are not limited to a petition for writ of habeas corpus under 28 U.S.C. § 2254 (including a second-in-time petition); a successive petition for writ of habeas corpus under 28 U.S.C. § 2244, including a claim under 2244(b)(2)(B) predicated on newly discovered evidence of actual innocence; a motion for relief from judgment under Federal Rule of Civil Procedure 60(b); an original writ petition in the United States Supreme Court, and/or a

federal § 1983 action. Undersigned counsel is currently researching, investigating, and preparing potentially meritorious claims and the appropriate procedural vehicles in which to bring them, some of which will likely be brought before this Court. For example, counsel is in the process of investigating the extraordinary circumstances that will justify reopening Mr. Gonzalez's case under Rule 60(b)(6) in this Court, including defects in the integrity of the initial habeas proceeding. Notably, counsel also is researching and investigating the adequacy of the state's postconviction process, particularly for actual innocence cases, and procedural gateways under *Sawyer v. Whitley*, 505 U.S. 333 (1992); *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006); *McQuiggin v. Perkins*, 569 U.S. 383 (2013; and *Martinez v. Ryan*, 566 U.S. 1 (2012).

However, given the limited amount of time, the vast record in this case, and the exigencies of the impending execution, undersigned counsel require additional time to continue investigation of such potentially meritorious claims and/or the appropriate vehicles to bring such claims. Importantly, given the serious nature of Mr. Gonzalez's claims and the viable federal vehicles to bring his claims, future litigation is not a "wholly futile enterprise." *See Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016). Nor are Mr. Gonzalez's claims "*indisputably* barred." *Id.* (emphasis added). As the Fifth Circuit recently recognized, it is only in a "rare circumstance" that an inmate's claims would be wholly futile. *Id.* It is certainly not the case here, given evidence in Mr. Gonzalez's case. Thus, it would be "improper to approve his execution before his newly appointed counsel has time to develop his . . . claim[s]. A stay is needed to make [Mr. Gonzalez's] right to counsel meaningful." *Id.*

Consultation with counsel for the Respondents confirms that the Respondents oppose the relief requested by this motion.

WHEREFORE Petitioner Ricardo Gonzalez respectfully requests that this Court grant his motion for a limited stay of execution as provided by 28 U.S.C. § 2251(a)(3).

Respectfully submitted,

KLUGH WILSON, LLC
40 N.W. Third Street, PH 1
Miami, Florida 33128
Tel. (305) 536-1191

/s/ Jenny Wilson
JENNY WILSON
Florida Bar No. 1031758
jenny@klughwilson.com

/s/ Richard C. Klugh
RICHARD C. KLUGH
Florida Bar No. 305294
rklugh@klughwilson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16 2026, I served the foregoing filing via CM/ECF to Counsel for Respondents from the Office of the Florida Attorney General and by email to: Nicole Smith (Nicole.Smith@myfloridalegal.com); Jennifer Davis (Jennifer.Davis@myfloridalegal.com); Paula Montlary (Paula.Montlary@myfloridalegal.com); Rick Buchwalter (Rick.Buchwalter@myfloridalegal.com); and capapp@myfloridalegal.com.

/s/ Richard C. Klugh
RICHARD C. KLUGH

# EXHIBIT 1

Order Striking Defendant's Motion for Production of Public Records
and Successive Motion for Postconviction Relief
State v. Gonzalez, No. F92-2141D (Fla. 11th Cir. Ct. Jan. 9, 2026)

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY - PUBLIC ACCESS

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

FILED JAN 09 2025 CLERK

STATE OF FLORIDA v. Case No. F92-2141D

Ricardo Gonzalez, Defendant. Judge Ellen Sue Venzer

**ORDER STRIKING DEFENDANT'S MOTION FOR PRODUCTION OF PUBLIC RECORDS AND SUCCESSIVE MOTION FOR POSTCONVICTION RELIEF (NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE)**

THIS CAUSE was heard upon the defendant's Motion for Production of Public Records and Successive Motion for Post-Conviction Relief (Newly Discovered Evidence of Actual Innocence), each of which was filed on or about October 21, 2025. Copies of each of these pleadings are attached to this Order as Exhibits A and B, respectively.

The Court, having reviewed the defendant's two (2) motions hereby STRIKES these pleadings. The defendant affixed the name of attorney Phillip Robert Horowitz to these pleadings; however, Mr. Horowitz advised this Court on January 6, 2026 that he does not represent the defendant. He advised that he believed he may have represented the defendant many years ago in a federal matter. The attorney who is currently appointed to represent the defendant is Jeffrey Feiler. Mr. Feiler appeared before this Court on January 9, 2026 and confirmed that the defendant is still his client. However, Mr. Feiler also advised this Court at this hearing that he does not adopt either of the defendant's currently-filed motions.

The defendant does not have the right to make his own defense personally and have the right to assistance of counsel. Logan v. State, 846 So.2d 472, 474 (Fla. 2003); Smith v. State, 213 So.3d 722, 741 (Fla. 2017); Lewis v. State, 766 So.2d 288, 289 (Fla. 4th D.C.A. 2000)("A criminal defendant has no Sixth Amendment right to represent himself and, at the same time, to have the assistance of counsel"). Because the instant pleadings by the defendant were filed on a pro se basis, have not been adopted by his current attorney, and do not allege any antipathy toward his current defense attorney, the defendant's motion are essentially a nullity.



ENTERED JAN 15 2026

40

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

WHEREFORE, for the foregoing reasons, this Court will STRIKE the defendant's Motion for Production of Public Records (Exhibit A) and his Successive Motion for Post-Conviction Relief (Newly Discovered Evidence of Actual Evidence( (Exhibit B).

The Clerk of Courts shall provide the Defendant and defense attorney a copy of this Order forthwith.

The Defendant shall have 30 days to file a Notice of Appeal of this ruling.

DONE AND ORDERED at Miami, Miami-Dade County, Florida, this the ______ day of JAN 09 2026, 2026.

ELLEN SUE VENZER
CIRCUIT JUDGE

xc: The Office of the State Attorney
Office of the Attorney General
Jeffrey Feiler, Attorney for Defendant
Ricardo Gonzalez, Defendant

I CERTIFY that a copy of this order has been furnished to the MOVANT, Ricardo Gonzalez by mail this ______ day of JAN 13 2026, 20______.

Deputy Clerk

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

# EXHIBIT A:

# DEFENDANT'S PRO SE MOTION FOR PRODUCTION OF PUBLIC RECORDS

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

1118

Div (11)

F920 2141 D

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR

MIAMI-DADE COUNTY, FLORIDA

CRIMINAL DIVISION

CASE NO: 92-1929

FILED FOR RECORD
2025 OCT 21 PM 2:50
CLERK CIRCUIT & COUNTY COURTS
CRIMINAL DIVISION

STATE OF FLORIDA,

Plaintiff,

vs.

RICARDO GONZALEZ,

Defendant. ______________________________/

**MOTION FOR PRODUCTION OF PUBLIC RECORDS**

Defendant, RICARDO GONZALEZ, proceeding pro se and as an indigent, hereby files this Motion for Production of Public Records pursuant to Rule 3.852, Florida Rules of Criminal Procedure, and Chapter 119, Florida Statutes. Mr. Gonzalez requests that this Court order the State Attorney's Office for the Eleventh Judicial Circuit to direct all relevant law enforcement and state agencies to produce and provide him with copies of all records on his case. In support of this motion, Mr. Gonzalez states the following:

1. Mr. Gonzalez is a death-sentenced inmate currently incarcerated at Florida State Prison. He is preparing to file a successive motion for post-conviction relief based on newly discovered evidence of his actual innocence and a coerced confession.

2. Mr. Gonzalez is indigent and has filed a corresponding Affidavit of Indigency with this Court. Pursuant to Rule 3.852(f), an indigent defendant is entitled to the production of public records without cost.

3. To adequately prepare his post-conviction motion and prove his claims, Mr. Gonzalez requires access to the complete records of his case. These records are in the possession of the State and its various agencies, including but not limited to the State

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Attorney's Office, the Miami-Dade Police Department (or its predecessor agency involved in the investigation), and the Miami-Dade County Medical Examiner's Office.

4. These records are essential to identify and corroborate the constitutional violations that led to his wrongful conviction, including the coercive tactics used to obtain his confession and the evidence that points to his innocence.

**RECORDS REQUESTED**

WHEREFORE, pursuant to Florida law, Ricardo Gonzalez respectfully requests that this Court enter an order compelling the State of Florida and all relevant agencies to produce and provide him with copies of the following public records:

1. **All Court Transcripts:** The complete and certified transcripts of all pre-trial proceedings, the entire guilt-innocence phase of the trial, any penalty phase proceedings, and all sentencing hearings.
2. **Law Enforcement and Investigative Records:**
   - a. All offense and incident reports, investigative reports, and any supplemental or follow-up reports generated by any law enforcement officer or detective.
   - b. The complete, unredacted file related to the interrogation of Ricardo Gonzalez, including but not limited to:
     - i. All audio and/or video recordings of the interrogation.
     - ii. A complete, verbatim transcript of the entire interrogation.
     - iii. All detective notes, memoranda, or summaries related to the interrogation.
   - c. All witness statements, whether recorded or written, from any individual interviewed in connection with the investigation.
   - d. All field notes, notebooks, or logs created by any investigating officer.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

3. **Crime Scene and Evidence Records:**

   a. All crime scene reports, logs, and officer notes from the scene of the offense.

   b. All crime scene photographs, negatives, contact sheets, and any video recordings.

   c. All crime scene diagrams, sketches, or measurements.

   d. All evidence logs, property receipts, and chain of custody documentation for every piece of physical evidence collected in this case.

4. **Forensic and Expert Records:**

   a. All forensic and laboratory reports, including but not limited to, analysis of ballistics (firearms, casings, projectiles), fingerprint lifts and comparisons, and any other serological or trace evidence analysis.

   b. All notes, bench notes, photographs, and underlying data used to generate such forensic reports.

   c. The complete report and all associated notes from the Medical Examiner's Office related to the autopsy of Officer Steven Bauer.

Mr. Gonzalez requests that these records be provided to him at his current address of record without cost, as he is indigent and the records are indispensable to his ability to seek post-conviction relief and prove a manifest injustice has occurred.

EXECUTED on this 7th day of October, 2025.

Respectfully submitted,

________________________________________

Phillip Robert Horowitz, Esquire

Bar no. 466557

9100 S. Dadeland Blvd., Ste 1500

Miami, Florida 33156-7816

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

# EXHIBIT B:

# DEFENDANT'S PRO SE SUCCESSIVE MOTION FOR POST-CONVICTION RELIEF (NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE)

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CRIMINAL DIVISION**

---

**STATE OF FLORIDA,**

**Plaintiff,**

**v.**

**RICARDO GONZALEZ, (ID No. 123763)**

**Defendant.**

---

**CASE NO. 92-1929 CAPITAL CASE**

---

**SUCCESSIVE MOTION FOR POST-CONVICTION RELIEF (NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE)**

---

The Defendant, RICARDO GONZALEZ, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Fla. R. Crim. P. 3.851, for an order vacating his conviction and sentence of death, and in support thereof states as follows:

**INTRODUCTION**

1. Ricardo Gonzalez, a man with no prior criminal history, was sentenced to death for a crime he did not commit. His conviction rests almost entirely on a detailed confession—a confession that was the product of a brutal, multi-day interrogation where he was physically abused, psychologically tormented, threatened, and ultimately broken into signing a false statement. For over three decades, Mr. Gonzalez has maintained his innocence from his cell on death row, asserting that he was merely

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

in the wrong place at the wrong time: an unwitting passenger in a car driven by men who were, unbeknownst to him, about to commit a robbery and murder.

2. This motion is based on newly discovered evidence that corroborates Mr. Gonzalez's innocence and his claim of coercion in two profound ways. First, the actual perpetrators of the crime, co-defendants Pablo San Martin and Leonardo Franqui, are now available to testify that Mr. Gonzalez was not involved in the planning or execution of the crime and was present only because he had accepted a ride to his job. Second, this motion presents evidence of the co-defendants' extensive and violent criminal histories, including prior convictions for murder, which serves as crucial context to explain Mr. Gonzalez's state of mind—both his terrified compliance on the day of the crime and his vulnerability during the subsequent coercive police interrogation.

3. This evidence could not have been discovered or presented previously. The co-defendants have been hostile and unwilling to speak until now, and their testimony can only be secured under the power of a subpoena at an evidentiary hearing. This new evidence is of such a compelling nature that it would, in all probability, result in Mr. Gonzalez's acquittal upon retrial. This Court should therefore grant an evidentiary hearing to explore these claims, prevent a manifest injustice, and vacate Mr. Gonzalez's conviction and sentence.

**STATEMENT OF FACTS**

4. On January 3, 1992, Mr. Gonzalez, a newly married young man and promising boxer with no criminal record, needed a ride to work. He asked an acquaintance, Pablo San Martin, for a ride. San Martin agreed but stated he first needed to stop at a Kislak National Bank branch. Mr. Gonzalez, needing the ride, agreed.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

5. Upon arriving at the bank, San Martin and another man, Leonardo Franqui, exited their vehicles brandishing firearms and ambushed a bank guard (off-duty officer), Steven Bauer. Mr. Gonzalez, who remained in the passenger seat, was in shock. When gunfire erupted, he ducked onto the floorboard to shield himself.

6. Following the robbery and murder, San Martin and Hernandes sped away. Shortly thereafter, they met with a fourth man, Pablo Abreu, and Mr. Gonzalez was immediately threatened by Franqui, who warned him not to speak about what he had witnessed, explicitly threatening the lives of his wife and family.

7. Terrified but believing it was the right thing to do, Mr. Gonzalez later turned himself in to the police to report what he knew. Instead of being treated as a witness, he was treated as a suspect. Over the course of a lengthy interrogation, he was subjected to horrific physical and psychological abuse. Detectives struck him with a hard object concealed in a cushion, stepped on his neck, and placed the muzzle of a gun to the back of his head. They offered him an "escape" and laid a gun on the table in front of him, an implicit threat he interpreted as an invitation for them to justifiably shoot him.

8. Broken down by the abuse and desperate to see his family again, Mr. Gonzalez finally succumbed to the detectives' false promises that he would only serve 10-12 years if he confessed. He gave a false, detailed confession that adopted the narrative the police fed to him. This coerced statement was the sole pillar of the State's case against him.

**PROCEDURAL HISTORY**

9. Mr. Gonzalez was convicted of first-degree murder and sentenced to death. His conviction and sentence were affirmed on direct appeal. *Gonzalez v. State*, 700 So. 2d 1217 (Fla. 1997).

10. Mr. Gonzalez has previously filed post-conviction motions, which were denied. This motion is successive but is properly filed under the exceptions outlined in Fla. R.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Crim. P. 3.851(d)(2), as it is based on newly discovered evidence that was previously unavailable and is sufficient to establish that no reasonable juror would have convicted him.

**GROUND I: NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE FROM CO-DEFENDANT TESTIMONY**

11. Florida law provides a gateway for post-conviction relief when there is newly discovered evidence of actual innocence. To obtain a new trial, a defendant must satisfy two prongs: (1) the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known of it by the use of diligence; and (2) the evidence must be of such a nature that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998).

12. The sworn testimony of a co-perpetrator exonerating the defendant can constitute newly discovered evidence. Here, co-defendants Pablo San Martin and Leonardo Franqui are now available to provide such testimony. They will testify that:

    a. Mr. Gonzalez had no prior knowledge of the plan to rob the bank.

    b. Mr. Gonzalez was not a participant in the robbery or murder and did not aid or abet the crime in any way.

    c. Mr. Gonzalez's presence at the scene was entirely incidental; he was simply a passenger who had been offered a ride to work.

    d. Mr. Gonzalez was immediately threatened and coerced into silence following the crime.

13. This evidence was previously unavailable. Both San Martin and Franqui have been incarcerated and hostile. Any prior attempt by Mr. Gonzalez to obtain their statements would have been futile and likely met with accusations of coercion. Their testimony

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

can only be obtained now through the compulsory power of a subpoena issued by this Court for an evidentiary hearing.

14. This exonerating testimony is of such a nature that it would probably produce an acquittal on retrial. It directly refutes the State's entire theory of the case and provides a compelling, alternative explanation for Mr. Gonzalez's presence at the scene. It would dismantle the credibility of his coerced confession and provide the jury with what it never had: the truth from the actual perpetrators.

**GROUND II: RELEVANCE OF CO-DEFENDANTS' VIOLENT CRIMINAL HISTORIES**

15. As part of this claim of newly discovered evidence, Mr. Gonzalez will establish that at the time of the offense in 1992, co-defendants San Martin and Franqui were not mere criminals; they were hardened, violent offenders with extensive criminal histories, including convictions for murder. This evidence is not offered as improper character evidence to show propensity under Fla. Stat. § 90.404, but for the permissible and critical purpose of establishing the context for Mr. Gonzalez's state of mind—a central issue in the case.

16. **Evidence of Duress and Coercion:** The co-defendants' history of violence is directly relevant to Mr. Gonzalez's claim that he was an unwitting participant acting under duress. The defense of duress requires a showing that the defendant acted under a reasonable fear of imminent personal injury. *See Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981). The jury at Mr. Gonzalez's trial never learned that he was in a car with known murderers. This fact is essential to understanding why a young man with no criminal past would be terrified into silence and compliance when confronted with their threats against his family. The co-defendants' violent history makes his fear objectively reasonable and his claim of duress credible.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

17. **Corroboration of Involuntary Confession:** This evidence also powerfully corroborates Mr. Gonzalez's claim that his confession was coerced. His state of mind during the police interrogation was not formed in a vacuum. It was the product of two layers of terror: first, the violent threats from known killers against his wife and family, and second, the physical and psychological abuse inflicted by detectives. His fear of retaliation from San Martin and Franqui made him uniquely vulnerable to the coercive tactics of the police, who offered him a false promise of a short sentence as his only way out. The co-defendants' violent past is therefore directly relevant to the "totality of the circumstances" under which his confession was obtained. *See State v. Carroll*, 103 So. 3d 929 (Fla. 1st DCA 2012).

18. In this context, the co-defendants' violent criminal records are not being used to suggest they acted in conformity with a violent character. Rather, the evidence is offered to explain Mr. Gonzalez's state of mind and the reasonableness of his fear, which are material facts at issue in his defense. This is a permissible use of such evidence under Florida law.

**GROUND III: THE CO-DEFENDANTS' TESTIMONY IS NEWLY DISCOVERED EVIDENCE CORROBORATING A COERCED CONFESSION AND A DUE PROCESS VIOLATION**

19. The central pillar of the State's case was Mr. Gonzalez's confession. The testimony of San Martin and Franqui now provides a powerful external source of evidence that this confession was, in fact, false and the product of unconstitutional coercion. When newly discovered evidence provides new corroboration for a claim that a confession was involuntary, it can form the basis for post-conviction relief.

20. The co-defendants' testimony will corroborate Mr. Gonzalez's account in several key ways:

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

a. By confirming he was an innocent bystander, their testimony will establish a factual predicate for why a confession would have been necessary in the first place—because there was no other evidence of his guilt.

b. By confirming they threatened him and his family immediately after the crime, their testimony explains his state of extreme fear and vulnerability entering the interrogation room.

21. The physical and psychological abuse described in Paragraph 7, combined with the pre-existing fear Mr. Gonzalez had of his co-defendants, created a coercive environment that is fundamentally incompatible with due process. Police tactics that overbear a defendant's will and rational intellect violate the Fourteenth Amendment. *See State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (condemning police tactics that violate fundamental fairness). The promise of a 10-12 year sentence was a false statement designed to elicit an involuntary admission, a tactic deemed coercive under Florida law. *See ALTON D. JOHNSON v. STATE OF FLORIDA*, 268 So. 3d 806 (Fla. 1st DCA 2019).

22. The co-defendants' testimony provides the missing link that would allow a jury to see the confession for what it was: the desperate act of a terrified and abused young man who was caught between violent criminals and coercive police officers. This new corroborative evidence would almost certainly lead a court to suppress the confession, which in turn would result in an acquittal.

**NEED FOR AN EVIDENTIARY HEARING**

23. Mr. Gonzalez is entitled to an evidentiary hearing on his claims. In a capital post-conviction case, a defendant is entitled to a hearing unless the motion and the record conclusively show that he is entitled to no relief. Fla. R. Crim. P. 3.851(f)(5). This is especially true when the claims are based on factual matters outside the record,

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

such as the testimony of unwilling witnesses. *See Rodriguez-Lara v. State*, 18 So. 3d 1194 (Fla. 3d DCA 2009).

24. This motion is not based on speculation but on a specific, good-faith representation that the co-defendants possess exonerating information. As explained above, obtaining pre-hearing affidavits from these hostile, incarcerated witnesses is impracticable and dangerous. The only forum in which their testimony can be safely and reliably obtained is a court-supervised evidentiary hearing, where they can be placed under oath and compelled to testify.

**CONCLUSION**

Ricardo Gonzalez has spent more than thirty years on death row for a crime he did not commit, based on a confession he did not voluntarily give. The newly available testimony of the true perpetrators, coupled with the crucial context of their violent histories, shatters the foundation of the State's case against him. This evidence demonstrates his actual innocence and the unconstitutional coercion that led to his conviction. To allow his conviction and death sentence to stand in the face of this evidence would be a fundamental miscarriage of justice.

WHEREFORE, the Defendant, RICARDO GONZALEZ, respectfully requests that this Honorable Court:

A. Grant an evidentiary hearing on the claims raised in this motion; B. Issue subpoenas or transport orders to compel the testimony of Pablo San Martin and Leonardo Franqui; C. Vacate his conviction and sentence of death; D. Grant such other and further relief as this Court may deem just and proper.

Dated this 7th day of October, 2025.

Respectfully submitted,

______________________________

Phillip Robert Horowitz, Esquire

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Florida Bar No. 466557 9100 S. Dadeland Blvd., Suite 1500, Miami, Florida 33156-7816

Office (305)670-1915 horowitzdefense@aol.com *Counsel for Ricardo Gonzalez*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail and/or U.S. Mail to the Office of the State Attorney, Eleventh Judicial Circuit, Miami-Dade County, Florida, this 7th day of October, 2025.

---

Phillip Robert Horowitz

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

such as the testimony of unwilling witnesses. *See Rodriguez-Lara v. State*, 18 So. 3d 1194 (Fla. 3d DCA 2009).

24. This motion is not based on speculation but on a specific, good-faith representation that the co-defendants possess exonerating information. As explained above, obtaining pre-hearing affidavits from these hostile, incarcerated witnesses is impracticable and dangerous. The only forum in which their testimony can be safely and reliably obtained is a court-supervised evidentiary hearing, where they can be placed under oath and compelled to testify.

**CONCLUSION**

Ricardo Gonzalez has spent more than thirty years on death row for a crime he did not commit, based on a confession he did not voluntarily give. The newly available testimony of the true perpetrators, coupled with the crucial context of their violent histories, shatters the foundation of the State's case against him. This evidence demonstrates his actual innocence and the unconstitutional coercion that led to his conviction. To allow his conviction and death sentence to stand in the face of this evidence would be a fundamental miscarriage of justice.

**WHEREFORE**, the Defendant, RICARDO GONZALEZ, respectfully requests that this Honorable Court:

A. Grant an evidentiary hearing on the claims raised in this motion; B. Issue subpoenas or transport orders to compel the testimony of Pablo San Martin and Leonardo Franqui; C. Vacate his conviction and sentence of death; D. Grant such other and further relief as this Court may deem just and proper.

Dated this 7th day of October, 2025.

Respectfully submitted,

______________________________

Phillip Robert Horowitz, Esquire

Florida Bar No. 466557 9100 S. Dadeland Blvd., Suite 1500, Miami, Florida 33156-7816

Office (305)670-1915 horowitzdefense@aol.com *Counsel for Ricardo Gonzalez*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail and/or U.S. Mail to the Office of the State Attorney, Eleventh Judicial Circuit, Miami-Dade County, Florida, this 7th day of October, 2025.

________________________________________

Phillip Robert Horowitz

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Div 11

F92021410

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR

MIAMI-DADE COUNTY, FLORIDA

CRIMINAL DIVISION

CASE NO: 92-1929

FILED FOR RECORD
2025 OCT 21 PM 2:50
CLERK, CIRCUIT & COUNTY COURTS
DADE COUNTY, FLA.
CIRCUIT CRIMINAL #13

JAN 09 2026
Stricken per crt

**STATE OF FLORIDA,**

Plaintiff,

vs.

**RICARDO GONZALEZ,**

Defendant. ________________________________/

**MOTION FOR PRODUCTION OF PUBLIC RECORDS**

Defendant, RICARDO GONZALEZ, proceeding pro se and as an indigent, hereby files this Motion for Production of Public Records pursuant to Rule 3.852, Florida Rules of Criminal Procedure, and Chapter 119, Florida Statutes. Mr. Gonzalez requests that this Court order the State Attorney's Office for the Eleventh Judicial Circuit to direct all relevant law enforcement and state agencies to produce and provide him with copies of all records on his case. In support of this motion, Mr. Gonzalez states the following:

1. Mr. Gonzalez is a death-sentenced inmate currently incarcerated at Florida State Prison. He is preparing to file a successive motion for post-conviction relief based on newly discovered evidence of his actual innocence and a coerced confession.
2. Mr. Gonzalez is indigent and has filed a corresponding Affidavit of Indigency with this Court. Pursuant to Rule 3.852(i), an indigent defendant is entitled to the production of public records without cost.
3. To adequately prepare his post-conviction motion and prove his claims, Mr. Gonzalez requires access to the complete records of his case. These records are in the possession of the State and its various agencies, including but not limited to the State

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

3. **Crime Scene and Evidence Records:**

   a. All crime scene reports, logs, and officer notes from the scene of the offense.

   b. All crime scene photographs, negatives, contact sheets, and any video recordings.

   c. All crime scene diagrams, sketches, or measurements.

   d. All evidence logs, property receipts, and chain of custody documentation for every piece of physical evidence collected in this case.

4. **Forensic and Expert Records:**

   a. All forensic and laboratory reports, including but not limited to, analysis of ballistics (firearms, casings, projectiles), fingerprint lifts and comparisons, and any other serological or trace evidence analysis.

   b. All notes, bench notes, photographs, and underlying data used to generate such forensic reports.

   c. The complete report and all associated notes from the Medical Examiner's Office related to the autopsy of Officer Steven Bauer.

Mr. Gonzalez requests that these records be provided to him at his current address of record without cost, as he is indigent and the records are indispensable to his ability to seek post-conviction relief and prove a manifest injustice has occurred.

EXECUTED on this 7th day of October, 2025.

Respectfully submitted,

Phillip Robert Horowitz, Esquire

Bar no. 466557

9100 S. Dadeland Blvd., Ste 1500

Miami, Florida 33156-7816

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Attorney's Office, the Miami-Dade Police Department (or its predecessor agency involved in the investigation), and the Miami-Dade County Medical Examiner's Office.

4. These records are essential to identify and corroborate the constitutional violations that led to his wrongful conviction, including the coercive tactics used to obtain his confession and the evidence that points to his innocence.

**RECORDS REQUESTED**

WHEREFORE, pursuant to Florida law, Ricardo Gonzalez respectfully requests that this Court enter an order compelling the State of Florida and all relevant agencies to produce and provide him with copies of the following public records:

1. **All Court Transcripts:** The complete and certified transcripts of all pre-trial proceedings, the entire guilt-innocence phase of the trial, any penalty phase proceedings, and all sentencing hearings.

2. **Law Enforcement and Investigative Records:**

   a. All offense and incident reports, investigative reports, and any supplemental or follow-up reports generated by any law enforcement officer or detective.

   b. The complete, unredacted file related to the interrogation of Ricardo Gonzalez, including but not limited to:

      i. All audio and/or video recordings of the interrogation.

      ii. A complete, verbatim transcript of the entire interrogation.

      iii. All detective notes, memoranda, or summaries related to the interrogation.

   c. All witness statements, whether recorded or written, from any individual interviewed in connection with the investigation.

   d. All field notes, notebooks, or logs created by any investigating officer.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Office (305)670-1915

horowitzdefense@aol.com

RICARDO GONZALEZ, Pro Se DC# 123763, Florida State Prison, Raiford, Florida 32083

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to the Office of the State Attorney, Eleventh Judicial Circuit, 1350 NW 12th Street, Miami, Florida 33125, and to the Office of the Attorney General, 444 Brickell Avenue, Suite 650, Miami, Florida 33131, this 7th day of October, 2025.

---

RICARDO GONZALEZ, Pro Se

Phillip Robert Horowitz, Esquire

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR

MIAMI-DADE COUNTY, FLORIDA

CRIMINAL DIVISION

CASE NO: 92-1929

**STATE OF FLORIDA,**

Plaintiff,

vs.

**RICARDO GONZALEZ,**

Defendant. ________________________________________/

**AFFIDAVIT OF INDIGENCY**

I, **RICARDO GONZALEZ,** being first duly sworn, depose and state as follows:

1. I am the Defendant in the above-styled cause. I am currently incarcerated at Florida State Prison, Raiford, Florida. My DC Number is 123763.
2. I am filing a Successive Motion for Post-Conviction Relief in this Court.
3. I am without employment, property, or funds and have no source of income. My only financial resources are the minimal funds deposited into my inmate trust account by family, which are used for basic hygiene and subsistence and are insufficient to pay any costs associated with this legal action.
4. Because of my poverty and incarceration, I am unable to pay the costs of this proceeding, including filing fees, costs of service, costs for the preparation of necessary records and transcripts, or other associated court costs.
5. I am making this request for indigency status in good faith.
6. I declare that the information contained in this affidavit is true and correct.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**EXECUTED on this 7th day of October, 2025.**

---

**RICARDO GONZALEZ, Pro Se DC# 123763 Florida State Prison Raiford, Florida**

**Phillip Robert Horowitz, Esquire**

**Bar no. 466557**

**9100 S. Dadeland Blvd., Suite 1500**

**Miami, Florida 33156-7816**

**(305)670-1915**

**horowitzdefense@aol.com**

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CRIMINAL DIVISION**

---

**STATE OF FLORIDA,**

**Plaintiff,**

**v.**

**RICARDO GONZALEZ, (ID No. 123763)**

**Defendant.**

---

**CASE NO. 92-1929 CAPITAL CASE**

---

**SUCCESSIVE MOTION FOR POST-CONVICTION RELIEF (NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE)**

---

The Defendant, RICARDO GONZALEZ, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Fla. R. Crim. P. 3.851, for an order vacating his conviction and sentence of death, and in support thereof states as follows:

**INTRODUCTION**

1. Ricardo Gonzalez, a man with no prior criminal history, was sentenced to death for a crime he did not commit. His conviction rests almost entirely on a detailed confession—a confession that was the product of a brutal, multi-day interrogation where he was physically abused, psychologically tormented, threatened, and ultimately broken into signing a false statement. For over three decades, Mr. Gonzalez has maintained his innocence from his cell on death row, asserting that he was merely

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

in the wrong place at the wrong time: an unwitting passenger in a car driven by men who were, unbeknownst to him, about to commit a robbery and murder.

2. This motion is based on newly discovered evidence that corroborates Mr. Gonzalez's innocence and his claim of coercion in two profound ways. First, the actual perpetrators of the crime, co-defendants Pablo San Martin and Leonardo Franqui, are now available to testify that Mr. Gonzalez was not involved in the planning or execution of the crime and was present only because he had accepted a ride to his job. Second, this motion presents evidence of the co-defendants' extensive and violent criminal histories, including prior convictions for murder, which serves as crucial context to explain Mr. Gonzalez's state of mind—both his terrified compliance on the day of the crime and his vulnerability during the subsequent coercive police interrogation.

3. This evidence could not have been discovered or presented previously. The co-defendants have been hostile and unwilling to speak until now, and their testimony can only be secured under the power of a subpoena at an evidentiary hearing. This new evidence is of such a compelling nature that it would, in all probability, result in Mr. Gonzalez's acquittal upon retrial. This Court should therefore grant an evidentiary hearing to explore these claims, prevent a manifest injustice, and vacate Mr. Gonzalez's conviction and sentence.

**STATEMENT OF FACTS**

4. On January 3, 1992, Mr. Gonzalez, a newly married young man and promising boxer with no criminal record, needed a ride to work. He asked an acquaintance, Pablo San Martin, for a ride. San Martin agreed but stated he first needed to stop at a Kislak National Bank branch. Mr. Gonzalez, needing the ride, agreed.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

5. Upon arriving at the bank, San Martin and another man, Leonardo Franqui, exited their vehicles brandishing firearms and ambushed a bank guard (off-duty officer), Steven Bauer. Mr. Gonzalez, who remained in the passenger seat, was in shock. When gunfire erupted, he ducked onto the floorboard to shield himself.

6. Following the robbery and murder, San Martin and Hernandez sped away. Shortly thereafter, they met with a fourth man, Pablo Abru, and Mr. Gonzalez was immediately threatened by Franqui, who warned him not to speak about what he had witnessed, explicitly threatening the lives of his wife and family.

7. Terrified but believing it was the right thing to do, Mr. Gonzalez later turned himself in to the police to report what he knew. Instead of being treated as a witness, he was treated as a suspect. Over the course of a lengthy interrogation, he was subjected to horrific physical and psychological abuse. Detectives struck him with a hard object concealed in a cushion, stepped on his neck, and placed the muzzle of a gun to the back of his head. They offered him an "escape" and laid a gun on the table in front of him, an implicit threat he interpreted as an invitation for them to justifiably shoot him.

8. Broken down by the abuse and desperate to see his family again, Mr. Gonzalez finally succumbed to the detectives' false promises that he would only serve 10-12 years if he confessed. He gave a false, detailed confession that adopted the narrative the police fed to him. This coerced statement was the sole pillar of the State's case against him.

**PROCEDURAL HISTORY**

9. Mr. Gonzalez was convicted of first-degree murder and sentenced to death. His conviction and sentence were affirmed on direct appeal. *Gonzalez v. State*, 700 So. 2d 1217 (Fla. 1997).

10. Mr. Gonzalez has previously filed post-conviction motions, which were denied. This motion is successive but is properly filed under the exceptions outlined in Fla. R.

Crim. P. 3.851(d)(2), as it is based on newly discovered evidence that was previously unavailable and is sufficient to establish that no reasonable juror would have convicted him.

**GROUND I: NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE FROM CO-DEFENDANT TESTIMONY**

11. Florida law provides a gateway for post-conviction relief when there is newly discovered evidence of actual innocence. To obtain a new trial, a defendant must satisfy two prongs: (1) the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known of it by the use of diligence; and (2) the evidence must be of such a nature that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998).

12. The sworn testimony of a co-perpetrator exonerating the defendant can constitute newly discovered evidence. Here, co-defendants Pablo San Martin and Leonardo Franqui are now available to provide such testimony. They will testify that:

    a. Mr. Gonzalez had no prior knowledge of the plan to rob the bank.

    b. Mr. Gonzalez was not a participant in the robbery or murder and did not aid or abet the crime in any way.

    c. Mr. Gonzalez's presence at the scene was entirely incidental; he was simply a passenger who had been offered a ride to work.

    d. Mr. Gonzalez was immediately threatened and coerced into silence following the crime.

13. This evidence was previously unavailable. Both San Martin and Franqui have been incarcerated and hostile. Any prior attempt by Mr. Gonzalez to obtain their statements would have been futile and likely met with accusations of coercion. Their testimony

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

can only be obtained now through the compulsory power of a subpoena issued by this Court for an evidentiary hearing.

14. This exonerating testimony is of such a nature that it would probably produce an acquittal on retrial. It directly refutes the State's entire theory of the case and provides a compelling, alternative explanation for Mr. Gonzalez's presence at the scene. It would dismantle the credibility of his coerced confession and provide the jury with what it never had: the truth from the actual perpetrators.

## GROUND II: RELEVANCE OF CO-DEFENDANTS' VIOLENT CRIMINAL HISTORIES

15. As part of this claim of newly discovered evidence, Mr. Gonzalez will establish that at the time of the offense in 1992, co-defendants San Martin and Franqui were not mere criminals; they were hardened, violent offenders with extensive criminal histories, including convictions for murder. This evidence is not offered as improper character evidence to show propensity under Fla. Stat. § 90.404, but for the permissible and critical purpose of establishing the context for Mr. Gonzalez's state of mind—a central issue in the case.

16. **Evidence of Duress and Coercion:** The co-defendants' history of violence is directly relevant to Mr. Gonzalez's claim that he was an unwitting participant acting under duress. The defense of duress requires a showing that the defendant acted under a reasonable fear of imminent personal injury. *See Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981). The jury at Mr. Gonzalez's trial never learned that he was in a car with known murderers. This fact is essential to understanding why a young man with no criminal past would be terrified into silence and compliance when confronted with their threats against his family. The co-defendants' violent history makes his fear objectively reasonable and his claim of duress credible.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

17. **Corroboration of Involuntary Confession:** This evidence also powerfully corroborates Mr. Gonzalez's claim that his confession was coerced. His state of mind during the police interrogation was not formed in a vacuum. It was the product of two layers of terror: first, the violent threats from known killers against his wife and family, and second, the physical and psychological abuse inflicted by detectives. His fear of retaliation from San Martin and Franqui made him uniquely vulnerable to the coercive tactics of the police, who offered him a false promise of a short sentence as his only way out. The co-defendants' violent past is therefore directly relevant to the "totality of the circumstances" under which his confession was obtained. *See State v. Carroll*, 103 So. 3d 929 (Fla. 1st DCA 2012).

18. In this context, the co-defendants' violent criminal records are not being used to suggest they acted in conformity with a violent character. Rather, the evidence is offered to explain Mr. Gonzalez's state of mind and the reasonableness of his fear, which are material facts at issue in his defense. This is a permissible use of such evidence under Florida law.

**GROUND III: THE CO-DEFENDANTS' TESTIMONY IS NEWLY DISCOVERED EVIDENCE CORROBORATING A COERCED CONFESSION AND A DUE PROCESS VIOLATION**

19. The central pillar of the State's case was Mr. Gonzalez's confession. The testimony of San Martin and Franqui now provides a powerful external source of evidence that this confession was, in fact, false and the product of unconstitutional coercion. When newly discovered evidence provides new corroboration for a claim that a confession was involuntary, it can form the basis for post-conviction relief.

20. The co-defendants' testimony will corroborate Mr. Gonzalez's account in several key ways:

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

a. By confirming he was an innocent bystander, their testimony will establish a factual predicate for why a confession would have been necessary in the first place—because there was no other evidence of his guilt.

b. By confirming they threatened him and his family immediately after the crime, their testimony explains his state of extreme fear and vulnerability entering the interrogation room.

21. The physical and psychological abuse described in Paragraph 7, combined with the pre-existing fear Mr. Gonzalez had of his co-defendants, created a coercive environment that is fundamentally incompatible with due process. Police tactics that overbear a defendant's will and rational intellect violate the Fourteenth Amendment. *See State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (condemning police tactics that violate fundamental fairness). The promise of a 10-12 year sentence was a false statement designed to elicit an involuntary admission, a tactic deemed coercive under Florida law. *See ALTON D. JOHNSON v. STATE OF FLORIDA*, 268 So. 3d 806 (Fla. 1st DCA 2019).

22. The co-defendants' testimony provides the missing link that would allow a jury to see the confession for what it was: the desperate act of a terrified and abused young man who was caught between violent criminals and coercive police officers. This new corroborative evidence would almost certainly lead a court to suppress the confession, which in turn would result in an acquittal.

**NEED FOR AN EVIDENTIARY HEARING**

23. Mr. Gonzalez is entitled to an evidentiary hearing on his claims. In a capital post-conviction case, a defendant is entitled to a hearing unless the motion and the record conclusively show that he is entitled to no relief. Fla. R. Crim. P. 3.851(f)(5). This is especially true when the claims are based on factual matters outside the record,

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CRIMINAL DIVISION**

JAN 09 2026
Stricken per ct

---

**STATE OF FLORIDA,**

**Plaintiff,**

**v.**

**RICARDO GONZALEZ, (ID No. 123763)**

**Defendant.**

---

**CASE NO. 92-1929 CAPITAL CASE**

---

**SUCCESSIVE MOTION FOR POST-CONVICTION RELIEF (NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE)**

---

The Defendant, RICARDO GONZALEZ, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Fla. R. Crim. P. 3.851, for an order vacating his conviction and sentence of death, and in support thereof states as follows:

**INTRODUCTION**

1. Ricardo Gonzalez, a man with no prior criminal history, was sentenced to death for a crime he did not commit. His conviction rests almost entirely on a detailed confession—a confession that was the product of a brutal, multi-day interrogation where he was physically abused, psychologically tormented, threatened, and ultimately broken into signing a false statement. For over three decades, Mr. Gonzalez has maintained his innocence from his cell on death row, asserting that he was merely

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

in the wrong place at the wrong time: an unwitting passenger in a car driven by men who were, unbeknownst to him, about to commit a robbery and murder.

2. This motion is based on newly discovered evidence that corroborates Mr. Gonzalez's innocence and his claim of coercion in two profound ways. First, the actual perpetrators of the crime, co-defendants Pablo San Martin and Leonardo Franqui, are now available to testify that Mr. Gonzalez was not involved in the planning or execution of the crime and was present only because he had accepted a ride to his job. Second, this motion presents evidence of the co-defendants' extensive and violent criminal histories, including prior convictions for murder, which serves as crucial context to explain Mr. Gonzalez's state of mind—both his terrified compliance on the day of the crime and his vulnerability during the subsequent coercive police interrogation.

3. This evidence could not have been discovered or presented previously. The co-defendants have been hostile and unwilling to speak until now, and their testimony can only be secured under the power of a subpoena at an evidentiary hearing. This new evidence is of such a compelling nature that it would, in all probability, result in Mr. Gonzalez's acquittal upon retrial. This Court should therefore grant an evidentiary hearing to explore these claims, prevent a manifest injustice, and vacate Mr. Gonzalez's conviction and sentence.

**STATEMENT OF FACTS**

4. On January 3, 1992, Mr. Gonzalez, a newly married young man and promising boxer with no criminal record, needed a ride to work. He asked an acquaintance, Pablo San Martin, for a ride. San Martin agreed but stated he first needed to stop at a Kislak National Bank branch. Mr. Gonzalez, needing the ride, agreed.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

5. Upon arriving at the bank, San Martin and another man, Leonardo Franqui, exited their vehicles brandishing firearms and ambushed a bank guard (off-duty officer), Steven Bauer. Mr. Gonzalez, who remained in the passenger seat, was in shock. When gunfire erupted, he ducked onto the floorboard to shield himself.

6. Following the robbery and murder, San Martin and Hernandez sped away. Shortly thereafter, they met with a fourth man, Pablo Abru, and Mr. Gonzalez was immediately threatened by Franqui, who warned him not to speak about what he had witnessed, explicitly threatening the lives of his wife and family.

7. Terrified but believing it was the right thing to do, Mr. Gonzalez later turned himself in to the police to report what he knew. Instead of being treated as a witness, he was treated as a suspect. Over the course of a lengthy interrogation, he was subjected to horrific physical and psychological abuse. Detectives struck him with a hard object concealed in a cushion, stepped on his neck, and placed the muzzle of a gun to the back of his head. They offered him an "escape" and laid a gun on the table in front of him, an implicit threat he interpreted as an invitation for them to justifiably shoot him.

8. Broken down by the abuse and desperate to see his family again, Mr. Gonzalez finally succumbed to the detectives' false promises that he would only serve 10-12 years if he confessed. He gave a false, detailed confession that adopted the narrative the police fed to him. This coerced statement was the sole pillar of the State's case against him.

**PROCEDURAL HISTORY**

9. Mr. Gonzalez was convicted of first-degree murder and sentenced to death. His conviction and sentence were affirmed on direct appeal. *Gonzalez v. State*, 700 So. 2d 1217 (Fla. 1997).

10. Mr. Gonzalez has previously filed post-conviction motions, which were denied. This motion is successive but is properly filed under the exceptions outlined in Fla. R.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Crim. P. 3.851(d)(2), as it is based on newly discovered evidence that was previously unavailable and is sufficient to establish that no reasonable juror would have convicted him.

**GROUND I: NEWLY DISCOVERED EVIDENCE OF ACTUAL INNOCENCE FROM CO-DEFENDANT TESTIMONY**

11. Florida law provides a gateway for post-conviction relief when there is newly discovered evidence of actual innocence. To obtain a new trial, a defendant must satisfy two prongs: (1) the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known of it by the use of diligence; and (2) the evidence must be of such a nature that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998).

12. The sworn testimony of a co-perpetrator exonerating the defendant can constitute newly discovered evidence. Here, co-defendants Pablo San Martin and Leonardo Franqui are now available to provide such testimony. They will testify that:

    a. Mr. Gonzalez had no prior knowledge of the plan to rob the bank.

    b. Mr. Gonzalez was not a participant in the robbery or murder and did not aid or abet the crime in any way.

    c. Mr. Gonzalez's presence at the scene was entirely incidental; he was simply a passenger who had been offered a ride to work.

    d. Mr. Gonzalez was immediately threatened and coerced into silence following the crime.

13. This evidence was previously unavailable. Both San Martin and Franqui have been incarcerated and hostile. Any prior attempt by Mr. Gonzalez to obtain their statements would have been futile and likely met with accusations of coercion. Their testimony

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

can only be obtained now through the compulsory power of a subpoena issued by this Court for an evidentiary hearing.

14. This exonerating testimony is of such a nature that it would probably produce an acquittal on retrial. It directly refutes the State's entire theory of the case and provides a compelling, alternative explanation for Mr. Gonzalez's presence at the scene. It would dismantle the credibility of his coerced confession and provide the jury with what it never had: the truth from the actual perpetrators.

**GROUND II: RELEVANCE OF CO-DEFENDANTS' VIOLENT CRIMINAL HISTORIES**

15. As part of this claim of newly discovered evidence, Mr. Gonzalez will establish that at the time of the offense in 1992, co-defendants San Martin and Franqui were not mere criminals; they were hardened, violent offenders with extensive criminal histories, including convictions for murder. This evidence is not offered as improper character evidence to show propensity under Fla. Stat. § 90.404, but for the permissible and critical purpose of establishing the context for Mr. Gonzalez's state of mind—a central issue in the case.

16. **Evidence of Duress and Coercion:** The co-defendants' history of violence is directly relevant to Mr. Gonzalez's claim that he was an unwitting participant acting under duress. The defense of duress requires a showing that the defendant acted under a reasonable fear of imminent personal injury. *See Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981). The jury at Mr. Gonzalez's trial never learned that he was in a car with known murderers. This fact is essential to understanding why a young man with no criminal past would be terrified into silence and compliance when confronted with their threats against his family. The co-defendants' violent history makes his fear objectively reasonable and his claim of duress credible.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

17. **Corroboration of Involuntary Confession:** This evidence also powerfully corroborates Mr. Gonzalez's claim that his confession was coerced. His state of mind during the police interrogation was not formed in a vacuum. It was the product of two layers of terror: first, the violent threats from known killers against his wife and family, and second, the physical and psychological abuse inflicted by detectives. His fear of retaliation from San Martin and Franqui made him uniquely vulnerable to the coercive tactics of the police, who offered him a false promise of a short sentence as his only way out. The co-defendants' violent past is therefore directly relevant to the "totality of the circumstances" under which his confession was obtained. *See State v. Carroll*, 103 So. 3d 929 (Fla. 1st DCA 2012).

18. In this context, the co-defendants' violent criminal records are not being used to suggest they acted in conformity with a violent character. Rather, the evidence is offered to explain Mr. Gonzalez's state of mind and the reasonableness of his fear, which are material facts at issue in his defense. This is a permissible use of such evidence under Florida law.

**GROUND III: THE CO-DEFENDANTS' TESTIMONY IS NEWLY DISCOVERED EVIDENCE CORROBORATING A COERCED CONFESSION AND A DUE PROCESS VIOLATION**

19. The central pillar of the State's case was Mr. Gonzalez's confession. The testimony of San Martin and Franqui now provides a powerful external source of evidence that this confession was, in fact, false and the product of unconstitutional coercion. When newly discovered evidence provides new corroboration for a claim that a confession was involuntary, it can form the basis for post-conviction relief.

20. The co-defendants' testimony will corroborate Mr. Gonzalez's account in several key ways:

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

a. By confirming he was an innocent bystander, their testimony will establish a factual predicate for why a confession would have been necessary in the first place—because there was no other evidence of his guilt.

b. By confirming they threatened him and his family immediately after the crime, their testimony explains his state of extreme fear and vulnerability entering the interrogation room.

21. The physical and psychological abuse described in Paragraph 7, combined with the pre-existing fear Mr. Gonzalez had of his co-defendants, created a coercive environment that is fundamentally incompatible with due process. Police tactics that overbear a defendant's will and rational intellect violate the Fourteenth Amendment. *See State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (condemning police tactics that violate fundamental fairness). The promise of a 10-12 year sentence was a false statement designed to elicit an involuntary admission, a tactic deemed coercive under Florida law. *See ALTON D. JOHNSON v. STATE OF FLORIDA*, 268 So. 3d 806 (Fla. 1st DCA 2019).

22. The co-defendants' testimony provides the missing link that would allow a jury to see the confession for what it was: the desperate act of a terrified and abused young man who was caught between violent criminals and coercive police officers. This new corroborative evidence would almost certainly lead a court to suppress the confession, which in turn would result in an acquittal.

**NEED FOR AN EVIDENTIARY HEARING**

23. Mr. Gonzalez is entitled to an evidentiary hearing on his claims. In a capital post-conviction case, a defendant is entitled to a hearing unless the motion and the record conclusively show that he is entitled to no relief. Fla. R. Crim. P. 3.851(f)(5). This is especially true when the claims are based on factual matters outside the record,

such as the testimony of unwilling witnesses. *See Rodriguez-Lara v. State*, 18 So. 3d 1194 (Fla. 3d DCA 2009).

24. This motion is not based on speculation but on a specific, good-faith representation that the co-defendants possess exonerating information. As explained above, obtaining pre-hearing affidavits from these hostile, incarcerated witnesses is impracticable and dangerous. The only forum in which their testimony can be safely and reliably obtained is a court-supervised evidentiary hearing, where they can be placed under oath and compelled to testify.

**CONCLUSION**

Ricardo Gonzalez has spent more than thirty years on death row for a crime he did not commit, based on a confession he did not voluntarily give. The newly available testimony of the true perpetrators, coupled with the crucial context of their violent histories, shatters the foundation of the State's case against him. This evidence demonstrates his actual innocence and the unconstitutional coercion that led to his conviction. To allow his conviction and death sentence to stand in the face of this evidence would be a fundamental miscarriage of justice.

**WHEREFORE**, the Defendant, RICARDO GONZALEZ, respectfully requests that this Honorable Court:

A. Grant an evidentiary hearing on the claims raised in this motion; B. Issue subpoenas or transport orders to compel the testimony of Pablo San Martin and Leonardo Franqui; C. Vacate his conviction and sentence of death; D. Grant such other and further relief as this Court may deem just and proper.

Dated this 7th day of October, 2025.

Respectfully submitted,

______________________________________

Phillip Robert Horowitz, Esquire

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

Florida Bar No. 466557 9100 S. Dadeland Blvd., Suite 1500, Miami, Florida 33156-7816

Office (305)670-1915 horowitzdefense@aol.com *Counsel for Ricardo Gonzalez*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail and/or U.S. Mail to the Office of the State Attorney, Eleventh Judicial Circuit, Miami-Dade County, Florida, this 7th day of October, 2025.

______________________________

Phillip Robert Horowitz

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

# EXHIBIT 2

Gutierrez v. Davis, No. 18-70028
(5th Cir. Sept. 10, 2018)

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 18-70028

RUBEN GUTIERREZ,

Petitioner - Appellee

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before SOUTHWICK, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:

The State of Texas has moved to vacate the district court's stay of execution of Ruben Gutierrez. Newly appointed counsel for Gutierrez responds that a stay is necessary so that counsel will have time to determine if there is any basis for a successive application for habeas corpus relief and to pursue clemency and a civil suit under 42 U.S.C. § 1983.

We agree with Texas that there is a serious question of whether it was proper to grant a stay under 28 U.S.C. § 2251(a)(1) when there was no pending habeas proceeding. The doubt arises because of a 2006 amendment to the

statute to add what is now Section 2251(a)(2). It states a "habeas corpus proceeding is not pending until the application is filed." According to a congressional conference report, Section 2251(a)(2)

> clarifies when a habeas proceeding is 'pending' for purposes of 28 U.S.C. 2251 . . . Overruling *McFarland v. Scott*, 512 U.S. 849 (1994) . . . this [amendment] provides that a habeas proceeding is not 'pending' until the habeas application itself is filed. For prisoners who have applied for counsel pursuant to 18 U.S.C. 3599(a)(2), there is a limited exception allowing the court to stay execution of a death sentence until after the attorney has been appointed or the application withdrawn or denied.

H.R. REP. No. 109-333, at 109–10 (2005).

Despite the Congressional purpose to alter the effect of *McFarland*, this Circuit has yet to address the effect of the revision. The district court did not discuss Section 2251(a)(2), largely we expect because the parties did not do so.

Regardless of our doubts about issuance of a stay of execution under Section 2251(a)(1) when there is no pending habeas application in the issuing court, the district court clearly had authority to enter a stay under Section 2251(a)(3), also added in 2006. If counsel is appointed, the stay can last for no longer than 90 days from the date of the appointment. § 2251(a)(3). Though the district court did not rely on that section, we conclude the stay is not invalid for failure to identify a clear source of authority for its issuance.

We next consider whether the district court abused its discretion in exercising this authority. It is significant that Section 2251(a)(3) combines the authority for granting a time-limited stay with a prisoner's right to apply for appointment of counsel under 18 U.S.C. § 3599(a)(2). If a court exercises its discretion to grant a stay at the time of appointing counsel, a 90-day stay serves the purpose of allowing counsel time to determine if an application for habeas corpus relief is appropriate. We conclude the district court did not abuse its discretion in this case.

We construe the stay as having been issued under Section 2251(a)(3). It is effective for no longer than 90 days from the date of appointment of the initial new counsel.

The motion to vacate the stay is DENIED.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

September 10, 2018

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 18-70028 Ruben Gutierrez v. Lorie Davis, Director
USDC No. 1:09-CV-22

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: _______________________
Monica R. Washington, Deputy Clerk
504-310-7705

Mr. David J. Bradley
Mr. Jefferson David Clendenin
Mr. Richard W. Rogers III
Mr. Peter James Walker

# EXHIBIT 3

Dailey v. Secretary, Florida Department of Corrections,
No. 8:07-cv-1897, Doc. 81 (M.D. Fla. Oct. 23, 2019)

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES M. DAILEY,

Petitioner,

v. Case No. 8:07-cv-1897-T-02AAS

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

Respondents.
______________________________________/

**ORDER GRANTING**
**LIMITED STAY OF EXECUTION**

This matter comes to the Court on Petitioner James Dailey's Motion for a Limited Stay of Execution Under 28 U.S.C. § 2251(a)(3)—Expedited (Dkt. 75) in which he moves the Court to stay his execution, scheduled for November 7, 2019, until December 15, 2019. Respondents oppose the motion. Dkt. 77. This Court STAYS imposition of the death penalty for ninety (90) days from appointment of federal counsel, until December 30, 2019 at which time this stay will automatically dissolve.

**Discussion**

Mr. Dailey, a Florida prisoner under sentence of death and scheduled to be

executed on November 7, moves to stay his execution under 28 U.S.C. § 2251(a)(3), which provides:

> If a State prisoner sentenced to death applies for appointment of counsel pursuant to section 3599(a)(2) of title 18 in a court that would have jurisdiction to entertain a habeas corpus application regarding that sentence, that court may stay execution of the sentence of death, but such stay shall terminate not later than 90 days after counsel is appointed or the application for appointment of counsel is withdrawn or denied.

Mr. Dailey argues that under § 2251(a)(3), this Court has and should exercise its "statutory authority to stay [his] execution in order to allow for meaningful conflict-free federal representation" by the Capital Habeas Unit, which was appointed on October 1, 2019, to provide Mr. Dailey with representation in any federal proceedings related to his first-degree murder conviction and death sentence. Dkt. 75 at 6. He further argues "whether to grant a stay under 28 U.S.C. § 2251(a)(3) is not discretionary if a petitioner's right to federally appointed counsel will be violated unless the court stays his execution[,]" and it would be an abuse of discretion not to grant a stay of execution in this case because the CHU was appointed on October 1, 2019, and will not have sufficient time to meaningfully research and present his claims before November 7. Dkt. 75 at 8.

In 2007 the Office of Capital Collateral Regional Counsel-Middle Region ("CCRC") was appointed to represent Mr. Dailey pursuant to 18 U.S.C. § 3599(a)(2). Dkt. 8. On September 30 of this year, Mr. Dailey moved to have the

Capital Habeas Unit of the Office of the Federal Public Defender for the Middle District of Florida ("CHU") appointed pursuant to 18 U.S.C. § 3599(a)(2). Dkt. 49. The next day, October 1, CCRC moved to withdraw as Mr. Dailey's counsel due to alleged conflicts of interest. Dkt. 56. The Court granted both motions on October 1 and appointed CHU to represent Mr. Dailey pursuant to 18 U.S.C. § 3599(a)(2). Dkt. 58.

Respondents object to any stay, noting correctly that Dailey has already engaged in a full round of federal habeas. Respondents also argue that any potential petition would be meritless and/or procedurally barred.

This Court has "jurisdiction to *entertain* a habeas corpus application regarding that sentence." 28 U.S.C. § 2251(a)(3) (emphasis added). Whether Dailey's potential habeas application will invoke this Court's jurisdiction depends upon what it contains. This Court likely has jurisdiction to entertain habeas corpus petitions that are not successive. *See Boyd v. United States*, 754 F.3d 1298, 1301 (11th Cir. 2014) ("[T]he phrase second or successive is not self-defining and it does not refer to all habeas petitions filed second or successive in time."). And, at minimum, this Court would be the court with jurisdiction to entertain a second or successive habeas corpus petition should it be permitted by the Eleventh Circuit Court of Appeals. *See* 28 U.S.C. § 2244(b)(3)(A). As such, this Court has jurisdiction to entertain habeas corpus applications by Mr. Dailey. And, since Mr.

Dailey's counsel—CHU—was appointed pursuant to 18 U.S.C. 3599(a)(2) and this Court may have jurisdiction to entertain a habeas corpus application should one be filed, this Court may stay execution for up to 90 days. 28 U.S.C. § 2251(a)(3).[1]

While "section 2251(a)(3) does not mandate an automatic stay, [it does] leave[] the exercise of stay jurisdiction to the sound discretion of a federal court." *Johnson v. Davis*, No. 4:11-cv-2466, Doc. 84, at 8 (S.D. Tex. Apr. 30, 2019) (Dkt. 75-3); *see also Gutierrez v. Davis*, No. 18-70028, Order Denying Motion, at *2 (5th Cir. Sept. 10, 2018) (Dkt. 75-2) ("We next consider whether the district court abused its discretion in [granting a stay pursuant to 28 U.S.C. § 2251(a)(3).]"). While this Court takes no position on any potential habeas application that Dailey's new counsel might file between now and the due date set below—or even if such application would be reviewable on its merits without approval from the Eleventh Circuit Court of Appeals—it is in the interests of a just and fair system for Mr. Dailey's new counsel to have the statutory grant of time to review and present habeas issues to this Court. Mr. Dailey has been on death row since 1987. Staying his execution for 53 days to ensure that Dailey's right to counsel is meaningful is scant prejudice to Respondents.

Accordingly, this Court grants Dailey's Motion for Limited Stay of

[1] Respondents point to cases that predate the amendment creating 28 U.S.C. 2551(a)(3)—or cite to portions of § 2551 predating the amendment—as requiring that a habeas petition be pending in order to institute a stay and requiring the use of a four-factor test. However, these are inapplicable here.

Execution Under 28 U.S.C. § 2251(a)(3)—Expedited. Dkt. 75. Mr. Dailey's execution shall be stayed for ninety (90) days until 11:59 PM December 30, 2019, at which time this stay will automatically dissolve. The Governor of Florida, Respondents, and the Warden of the Florida State Prison are hereby enjoined from executing James M. Dailey during the pendency of this stay.[2] Mr. Dailey and his counsel are ordered to file any habeas corpus petition or any other grounds for relief in federal court no later than November 30, 2019, at 5 PM.

**DONE AND ORDERED** at Tampa, Florida, on October 23, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

[2] Respondents argue that this stay would halt further state court proceedings in this matter under 28 U.S.C. § 2551(b). Dkt. 77 at 2 n.2. However, § 2551(b) predates the 2006 amendment that created § 2551(a)(3). As such this stay has no effect on the pendency or progress of state court proceedings.

# EXHIBIT 4

Johnson v. Davis, No. 4:11-cv-2466, Doc. 84
(S.D. Tex. Apr. 30, 2019)

United States District Court
Southern District of Texas
ENTERED
April 30, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DEXTER JOHNSON, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-2466 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

# ORDER

In 2007, a Texas jury convicted Dexter Johnson of capital murder and he was sentenced to death. Johnson has extensively litigated issues relating to his conviction and sentence in both state and federal court. The State of Texas has set Johnson's execution for May 2, 2019.

On February 5, 2019, this Court appointed supplemental counsel to assist in investigating and litigating issues that were not included in Johnson's initial federal habeas petition. (Docket Entry No. 70). Supplemental counsel has filed (1) a motion to terminate the appointment of Johnson's original federal habeas attorney, Patrick F. McCann and (2) a motion to stay Johnson's execution. (Docket Entry No. 76, 77). Mr. McCann has also filed a motion seeking permission to proceed *ex parte* in requests for funds. (Docket Entry No. 75). For the reasons discussed below, the Court will stay Johnson's execution. The Court will reserve adjudication of the other pending motions until after holding a hearing on said motions.

## I. Background

In 2007, a Texas jury convicted Johnson of capital murder for the murder of Maria "Sally" Aparece. On June 28, 2007, he was sentenced to death. That same day, the trial court appointed Patrick F. McCann to represent Johnson in state habeas corpus proceedings. Johnson unsuccessfully

sought state appellate and habeas remedies.

After the conclusion of state habeas review, Johnson filed a motion for the appointment of counsel in federal court on June 28, 2011. (*Johnson v. Thaler*, 4:10-mc-318, Docket Entry No. 1). "In any post conviction proceeding under section 2254 or . . . any defendant who is or becomes financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys . . . ." 18 U.S.C. § 3599(2).[1] Johnson requested that Mr. McCann continue representing him in the federal habeas action. At that time, federal courts frequently appointed state habeas counsel with the understanding that an attorney's experience in state court would aid the preparation and litigation of a federal habeas petition.[2] The Court appointed Mr. McCann as counsel of record on July 30, 2010. (*Johnson v. Thaler*, 4:10-mc-318, Docket Entry No. 2). The Court did not appoint any attorney to serve as co-counsel and Johnson did not request that another attorney assist McCann in the litigation.

Johnson litigated an initial federal habeas action, a successive habeas petition, and extensive related issues in this Court. During the pendency of the litigation, however, the Supreme Court issued two decisions that discourage a continuity of representation. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved out a narrow equitable exception to federal procedural default rules based on a state habeas attorney's legal representation. *Martinez* held that a state habeas

---

1 The Court appointed Mr. McCann pursuant to former 21 U.S.C. § 848(q)(9), the predecessor to 18 U.S.C. § 3599(2).

2 Under the heading "Continuity of Representation," the CJA Guide to Judiciary Policy stated, and still states, that "in the interest of justice and judicial and fiscal economy, unless precluded by a conflict of interest, presiding judicial officers are urged to continue the appointment of state post-conviction counsel, if qualified . . . when the case enters the federal system." 6 Guide to Judiciary Policy § 620.70.

attorney's failure to raise certain claims may allow federal review which otherwise would have been procedurally barred. In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court applied *Martinez* to cases rising from the Texas courts. Subsequent circuit cases encouraged the appointment of supplemental counsel or other remedial steps to give *Martinez* effect in already-ongoing federal habeas cases. *See Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015); *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015). Neither party, however, asked to reevaluate Mr. McCann's appointed legal representation in light of *Martinez*.

On December 6, 2018, the State of Texas set Johnson's execution for May 2, 2019.

Soon thereafter, Johnson wrote letters to the Court complaining about Mr. McCann's appointed legal representation. (Docket Entry Nos. 65, 68). On February 7, 2019, the Court entered an Order addressing Johnson's concerns. Recognizing that "[a] court may only substitute counsel when in the 'interests of justice,'" the Court observed that Mr. McCann "has litigated this case for many years through several different legal challenges." (Docket Entry No.70 at 1) (quoting *Martel v. Clair*, 565 U.S. 648, 659-60 (2012)). Concerned that it would not be "wise to set aside Mr. McCann's experience with this case so near the execution date," the Court did not remove Mr. McCann as lead counsel. (Docket Entry No. 70 at 2).

The Court, however, recognized that section 3599(a)(2) allowed for the appointment of "one or more attorneys." Accordingly, the Court appointed Jeremy Schepers of the Office of the Federal Defender, Northern District of Texas as co-counsel. The Court set out Mr. Schepers' responsibilities:

> The Court anticipates that co-counsel will make a thorough, and independent, assessment of whether unpresented claims remain. Specifically, co-counsel will explore whether Johnson can establish cause for the procedural default of any

> ineffective-assistance-of-trial-counsel claims pursuant to *Martinez*, whether those claims merit relief, and whether a viable vehicle exists for raising those claims in federal court.

(Docket Entry No. 70 at 3). In doing so, the Court followed the Fifth Circuit's suggestion in similar cases that the appointment of supplemental counsel would allow for "determining whether [an inmate] has additional habeas claims that ought to have been brought" while maintaining "the rich resource of the counsel who has been through the state habeas process and who has prosecuted the federal habeas action." *Speer*, 781 F.3d at 786; *see also Mendoza*, 783 F.3d at 203 (remanding for the appointment of supplemental counsel).

The questions now before the Court are whether Mr. McCann should continue representing Johnson and whether the circumstances require a stay of the execution date.

## II. Johnson's Pending Motions

Three motions remain pending at this time. Both Johnson's initial federal counsel and his supplemental counsel have filed pleadings. First, Mr. McCann has filed a motion for leave to proceed *ex parte* and under seal in a request for resources for a clemency petition and other last-minute litigation. (Docket Entry No. 75).[3]

Second, two months after his appointment Mr. Schepers filed an Opposed Motion to Terminate Patrick F. McCann's Appointment. (Docket Entry No. 76). Pursuant to his role as supplemental counsel, Mr. Schepers identifies several issues that Mr. McCann did not litigate in the initial habeas proceedings. Further, Mr. Schepers asserts that "Mr. McCann continues to ignore his ethical duties to Mr. Johnson." (Docket Entry No. 82 at 14). Mr. Schepers alleges that Mr. McCann

---

[3] Under 18 U.S.C. § 3599(g), "[n]o ex parte proceeding, communication, or request may be considered . . . unless a proper showing is made concerning the need for confidentiality."

has violated ethical and professional duties throughout his representation. Mr. Schepers' pleadings suggest that the current relationship between the attorneys prejudices Johnson's ability to investigate and pursue litigation. Mr. Schepers contends that the Court should terminate Mr. McCann's appointment and that his office has "the requisite knowledge, skill, and experience to effectively represent Mr. Johnson in both state and federal court." (Docket Entry No. 76 at 38).

Mr. McCann filed a sealed pleading in which he disputes the manner in which Mr. Schepers has characterized his appointed legal representation in this case. Mr. McCann also described issues he anticipated raising in subsequent litigation. (Docket Entry No. 78). Mr. McCann has subsequently filed a state-court motion to stay Johnson's execution. On April 29, 2019, the Court of Criminal Appeals entered an order refusing to stay Johnson's execution. *Ex parte Johnson*, No. WR-73,600-02 (Tex. Crim. App. Apr. 29, 2019).

Third, Mr. Schepers has filed an Opposed Motion for a Stay of Execution on April 8, 2019. (Docket Entry No. 77).[4] The motion argues that "[w]hile the preliminary review of Mr. Johnson's case establishes that potentially meritorious claims still exist, more time to investigate and develop these issues is required to provide Mr. Johnson with meaningful, conflict-free representation." (Docket Entry No. 77 at 4). The motion argues that this Court possesses statutory authority to stay the execution. (Docket Entry No. 77 at 4-6).

Respondent has filed responses to each of the pending motions. With respect to the pending motion for a stay of execution, Respondent filed a response on April 22, 2019, arguing that this Court lacks jurisdiction to enter a stay. (Docket Entry No. 81 at 8-21). Alternatively, Respondent

---

4 Mr. McCann indicates that he would have joined in the motion for a stay, had he been consulted about it.

contends that Johnson has not shown entitlement to a stay. (Docket Entry No. 81 at 21-37). Mr. Schepers filed a reply to Respondent's papers on April 24, 2019. (Docket Entry No. 82).

For the reasons discussed below, the Court will stay Johnson's execution. The question of whether to terminate Mr. McCann's appointment, however, requires additional exploration and development.

**III. Stay of Execution**

A prisoner condemned to death, however imminent that death may be, has no automatic entitlement to a stay of execution. *See McFarland v. Scott*, 512 U.S. 849, 858 (1994). "A stay of execution is an equitable remedy that is not available as a matter of right." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). In deciding whether to issue a stay of execution, federal cases generally consider two different standards. First, the Supreme Court in *McFarland v. Scott*, 512 U.S. 849, 858 (1994) "has instructed federal courts to grant a stay" when an inmate has "insufficient time to meaningfully exercise [his right to counsel] because of an impending execution . . . ." *Charles v. Stephens*, 612 F. App'x 214, 222 (5th Cir. 2015). Second, the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) outlined four factors that courts use in deciding whether to stay an execution: "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014) (quotation omitted). The Fifth Circuit has not decided which standard governs whether to stay an execution. *See Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016); *Charles*, 612 F. App'x at

222.[5]

Respondent argues that this Court lacks jurisdiction to issue a stay because no federal habeas petition is currently pending. A federal court has jurisdiction under 28 U.S.C. § 2251 to enter a stay of execution after an inmate moves for the appointment of counsel. *See Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016); *Charles*, 612 F. App'x at 219. While section 2251(a)(1) specifies that a court may issue a stay only when "a habeas corpus is pending," and section 2251(a)(2) clarifies that "a habeas corpus proceeding is not pending until the application is filed," section 2251(a)(3) allows for a ninety-day stay to issue after the appointment of counsel:

> If a State prisoner sentenced to death applies for appointment of counsel pursuant to section 3599(a)(2) of title 18 in a court that would have jurisdiction to entertain a habeas corpus application regarding that sentence, that court may stay execution of the sentence of death, but such stay shall terminate not later than 90 days after counsel is appointed or the application for appointment of counsel is withdrawn or denied.

28 U.S.C. § 2251(a)(3).

The Court appointed supplemental counsel on February 5, 2019. Section 2251(a)(3) then

---

[5] In earlier cases, the Fifth Circuit held that "[t]he power to issue a stay of execution comes from [28 U.S.C.] § 2251," and thus when considering a stay "the question is whether there is a pending or potential habeas corpus proceeding before the court." *Rosales v. Quarterman*, 565 F.3d 308, 311 (5th Cir. 2009) (citing *Teague v. Johnson*, 151 F.3d 291 (5th Cir. 1998) ("[O]nce the appellate mandate issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251."); *see also Howard v. Dretke*, 157 F. App'x 667, 670-72 (5th Cir. 2005); *Williams v. Cain*, 143 F.3d 949, 950 (5th Cir. 1998). In recent cases, however, the Fifth Circuit found that a district court has power to grant a stay after counsel is appointed and that jurisdiction to do so continues even when an active habeas petition is not pending. *See Ramirez v. Davis*, 675 F. App'x 478, 479 (5th Cir. 2017); *Battaglia*, 824 F.3d at 475; *Charles*, 612 F. App'x at 218; *see also Ryan v. Gonzales*, 568 U.S. 57, 70-71 (2013) ("[A] district court may stay a capital prisoner's execution once the prisoner has invoked his statutory right to counsel."). For example, in *Ramirez* the district court entered a stay after substituting counsel only days before a scheduled execution. *Ramirez v. Davis*, No. 2:12-cv-00410 (S.D. Tex. Jan. 31, 2017). The Fifth Circuit affirmed the lower court in a brief order and stated that "the district court did not lack jurisdiction under these circumstances to grant the stay." *Ramirez*, 675 F. App'x at 479.

allowed for a stay of execution until May 6, 2019. *See Jennings v. Davis*, ___ F. App'x ___, 2019 WL 384943, at *2 (5th Cir. Jan. 28, 2019) ("granting a stay based upon the appointment of counsel in the district court is limited to 90 days").[6] Section 2251(a)(3) does not mandate an automatic stay, but leaves the exercise of stay jurisdiction to the sound discretion of a federal court. That section apparently allows for a stay without relying on the *McFarland* or *Nken* standards. *See Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018) (affirming a stay under section 2251(a)(3) without considering additional standards).

The circumstances suggest a stay would be appropriate in this case. The Court appointed supplemental counsel only a short time before Johnson's execution date. Recent pleadings have identified several previously undeveloped issues for which *Martinez* may provide a vehicle for federal consideration of their merits. The limited time since the appointment of counsel has not provided a full opportunity for litigating undeveloped issues. The recent pleadings also reveal troubling concerns about Johnson's current appointed legal representation which need resolution to preserve his rights before execution. The short time remaining does not provide a sufficient opportunity to resolve concerns about his representation. The Court finds that concerns about the relationship between Johnson's appointed attorneys, the need for additional time for the development of habeas claims that may be available under *Martinez*, and the overarching guarantee of effective

---

[6] Respondent argues that section 2251(a)(3) only applies to the appointment of "new counsel," not co-counsel or supplemental counsel. (Docket Entry No. 81 at 24). The statute only specifies that it governs when an inmate "applies for the appointment of counsel pursuant to section 3599(a)(3) of title 18 . . . ." 28 U.S.C. § 2251(a)(3). Section 3599(a)(3), however, authorizes the "appointment of one or more attorneys," suggesting that the appointment of co-counsel may trigger the availability of a stay under section 2251(a)(3). Given the discrete circumstances of this case, and particularly co-counsel's argument that lead counsel's representation was ineffective because of conflict, the Court finds that section 2251(a)(3) provides jurisdiction to stay Johnson's execution for ninety days from the appointment of conflict-free co-counsel.

legal representation suggest that a stay of execution be appropriate under the instant circumstances. Under the statutory authority of section 2251(a)(3), the Court will grant Johnson's motion for a stay of execution.

In addition to the statutory authority, the *McFarland* standard allows for a stay to make the right to counsel "effective," *Battaglia*, 824 F.3d at 475, signifying that the guarantee of legal representation cannot be meaningfully realized without a stay. *See McFarland*, 512 U.S. at 858-59. For the reasons discussed above, the Court finds that a stay of execution is necessary to preserve Johnson's right to meaningful and effective legal representation.

Under the *Nken* standard, the Court finds that: (1) because supplemental counsel has had little time to investigate potential issues, and conflict has apparently compromised Johnson's legal representation, it would be premature to decide whether Johnson may succeed in any future grounds for relief; (2) the possibility of irreparable injury weighs heavily in Johnson's favor; (3) the State of Texas has a definite right to enforce its judgment; but (4) the public interest also lies in legal proceedings that honor and preserve an individual's inherent rights. Giving heavy consideration to the promise of meaningful legal representation, the Court finds that Johnson is entitled to a stay of execution.

By separate order, the Court will schedule a hearing to address the concerns raised in the motion to terminate Mr. McCann's appointed legal representation and the pending request to file funding requests *ex parte*.

## IV. Conclusion

The Court **GRANTS** Johnson's motion (Docket Entry No. 77) and **STAYS** his execution for ninety days effective from the date of the appointment of co-counsel.

The Clerk will provide copies of this Order to the parties.

SIGNED on APR 3 0 2019, at Houston, Texas.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE