UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RICARDO GONZALEZ,

Petitioner,

vs.

SECRETARY, D.O.C., and
FLORIDA ATTORNEY GENERAL,

Respondents.
_____________________________________/

CASE NO. 08-22909-CIV-DIMITROULEAS

DEATH WARRANT SIGNED
EXECUTION SCHEDULED FOR
DECEMBER 1, 2026 AT 6:00 P.M.

# ORDER

THIS CAUSE is before the Court on Petitioner Gonzalez's November 16, 2026 Petition For a Limited Stay of Execution. [DE 36]. The Court has considered the State's November 23, 2026 Response. [DE-42] and Gonzalez's November 24, 2026 Reply [DE-47] and finds as follows:

## BACKGROUND

1. On February 4, 1992, Gonzalez, along with Leonardo Franqui, Pablo San Martin, Fernando Fernandez and Pablo Abreu, was indicted and charged with First Degree Murder of a Law Enforcement Officer; Armed Robbery; two counts of Aggravated Assault, Possession of a Firearm While Engaged in a Felony; two counts of Grand Theft; and two counts of Burglary (Volume 5, Appx. N, pp. 1-5). Fernandez's case was severed and tried before a separate jury; however, there were dual juries, and the trials were somewhat simultaneous.

2. On June 2, 1994, a jury found Gonzalez guilty of First-Degree Murder of a Law Enforcement Officer with a Firearm; Armed Robbery with a Firearm; Aggravated Assault with a

Firearm;[1] two counts of Grand Theft; and two counts of Burglary, (Volume 7, Appx. N, pp. 480-482]; he was adjudicated guilty. (Volume 5, Appx. N, pp. 7-8).

3. On September 23, 1994, by a vote of 7-5, the jury recommended the death penalty for Gonzalez. (Volume 7, Appx. N, p. 559).

4. On October 11, 1994, Gonzalez was sentenced to death. (Volume 8, Appx. N, pp. 746-750). Judge Sorondo entered a detailed order. (Volume 26, Appx. N, pp. 2-22]. Judge Sorondo also sentenced Franqui and San Martin to death.[2]

5. On September 18, 1997, the Florida Supreme Court affirmed Gonzalez's convictions. The issues affirmed on appeal were the denial of defense peremptory challenges, the denial of severance, and the introduction of the co-defendants' confessions. However, the Florida Supreme Court remanded for a new penalty phase. (Volume 27, Appx. O, pp. 55-57). *Gonzalez v. State*, 700 So. 2d 1217 (Fla. 1997). Rehearing was denied on October 30, 1997. The United States Supreme Court denied two petitions for certiorari, first, on April 16, 1998; and second, on May 26, 1998. *Gonzalez v. Florida*, 523 U.S. 1062 (1998); *Gonzalez v. Florida*, 523 U.S. 1145 (1998).

6. On August 20, 1998, another jury, by a vote of 8-4, recommended death for

---

[1] After the opening statement, the State filed a nolle prosequi as to one count of aggravated assault and the charge of unlawful possession of a firearm during a felony. (Volume 13, Appx. N, p. 867). *San Martin v. State*, 717 So. 2d 462–64 n. 1 (Fla. 1998). Pablo Abreu pled guilty and received a life sentence.

[2] The Florida Supreme Court later vacated both Fernando Fernandez and Pablo San Martin's death sentences. *Fernandez v. State*, 730 So. 2d 277 (Fla. 1999); *San Martin v. State*, 717 So. 2d 462 (Fla. 1998) *cert. denied*, 526 U.S. 1071 (1999). San Martin, along with Franqui and Abreu, was convicted of another murder and sentenced to death. *San Martin v. State*, 705 So. 2d 1337 (Fla. 1997). Habeas Corpus was denied in that case. *See Martin v.McNeil,* No. 08-23487-CV-Huck (S.D. Fla. Sep. 4, 2009). Franqui's death sentence was affirmed by the Florida Supreme Court. *Franqui v. State*, 804 So. 2d 1185 (Fla. 2001). Franqui's habeas petition in this case was finally denied by Judge Moore in 07-22384-CV-Moore on April 20, 2009. [DE 26]. The Eleventh Circuit directed that the petition be dismissed for lack of jurisdiction. *Franqui v. Florida*, 638 F. 3d 1368 (11th Cir. 2011). Franqui and Pablo San Martin are apparently still on death row. *Franqui v. Sec'y Fla. D.O.C.*; 2026 WL 2296422 (11th Cir. 2026); Fernadez is deceased.

Gonzalez after a penalty phase. (Volume 28, Appx. O, p. 219).

7. On September 18, 1998, Judge Scola imposed a death sentence. (Volume 28, Appx. O, pp. 245-260); (Volume 28, Appx. O, pp. 265-266). (Volume 28, Appx. O, pp. 345-364).

8. On May 10, 2001, the Florida Supreme Court affirmed.[3] *Gonzalez v. State*, 786 So. 2d 559 (Fla. 2001). Gonzalez's conviction became final ninety (90) days later on August 8, 2001, when he did not petition the U.S. Supreme Court for a writ of certiorari. *Bond v. Moore*, 309 F. 3d 770, 774 (11th Cir. 2002).

9. Three hundred forty-five (345) days later, on July 16, 2002, Gonzalez filed his "shell" Motion to Vacate under Fla. R. Crim. Proc. 3.850. (Volume 40, Appx. P, pp. 145-158). Although counsel certified the motion on July 16, 2002, it was not filed until July 19, 2002. Gonzalez did not get the benefit of the "mailbox rule", as he was represented by counsel. *Sandvik v. U.S.*, 177 F. 3d 1269, 1271 (11th Cir. 1999) *reh'g denied,* 207 F. 3d 666 (11th Cir. 2000); *Rutledge v. U.S.*, 230 F. 3d 1041, 1052 (7th Cir. 2000) *cert. denied*, 531 U.S. 1199 (2001). An Amended Motion to Vacate was filed on March 10, 2003. (Volume 40, Appx. P, pp. 187-259).

10. The trial court granted an evidentiary hearing on whether re-sentencing counsel was ineffective in the improper use of mental health experts. (Vol. 42, App P, pp, 546-600).

11. As to the issue that was heard at the evidentiary hearing and also as to the other issues, the trial court, Judge Kevin Emas, denied relief, finding:

[3] The following issues were raised: erroneous admission of co-defendants' statements, double counting by using victim's status as a police officer, rejection of the un-controverted testimony of defense expert, prosecutor's improper closing argument and disproportionate death sentence.

A. Trial Counsel was not ineffective in failing to object to the prosecutor's opening statement, in that the statements made in opening were not improper. Any objection would have been overruled.

B. Trial counsel was not ineffective in failing to call Detectives La Porte or Pearce or failing to introduce a 9 millimeter firearm discovered at an unrelated scene.

C. Trial counsel was not ineffective in failing to object to inaccurate statements of law regarding the jury's role and the burden of proof.

D. Trial counsel was not ineffective in failing to object to the prosecutor's comments or presentation of victim impact evidence.

E. Trial counsel was not ineffective in calling three (3) expert witnesses who contradicted each other.

F. Trial counsel was not ineffective in failing to call Gonzalez as a witness.

G. The life sentence subsequently imposed on co-defendant Fernando Fernandez would not have produced a life recommendation at a new sentencing proceeding.

H. Rule 3.851 is not unconstitutional.

I. Public records were properly disclosed.

J. Florida's statutory scheme is not unconstitutional.

K. An insanity claim is premature. (Volume 42, App. P, pp. 505-600).

12. On July 3, 2008, the Florida Supreme Court affirmed the denial of Gonzalez's motion for post-conviction relief. (Volume 45, Appx. U) *Gonzalez v. State*, 990 So. 2d 1017 (Fla. 2008). Mandate issued on September 29, 2008. (Volume 45, Appx Z).

13. Twenty-one (21) days later, on October 20, 2008, Gonzalez filed a federal habeas petition, alleging:

A. It was error to admit Franqui and San Martin's confessions in a joint trial.

B. It was error to deny Gonzalez the opportunity to exercise peremptory challenges against Jurors Aurelio Diaz and Adriana Andani.

C. Ineffective Assistance of Counsel at the Guilt Phase:

(1) Failure to object to the prosecutor's opening statement:

(a) Victim, a good-natured guy

(b) People liked him

(c) Bullets ripped through the victim's body, exploding his heart

(2) Failure to object to teller LaSonya Hadley's relationship with the victim or that victim was singing a little song.

(3) Failure to call Det. La Porte to testify about an inoperable gun, found blocks away from the bank.

D. Ineffective Assistance of Counsel at Re-Sentencing:

(1) Failure to object to:

(a) Comments about the weighing process

(b) Comments about the jury's role

(c) Jury instruction on Burden of Proof

(d) Victim impact evidence

(i) LaSonya Hadley's testimony about the victim

(ii) Michelle Watson's testimony

(e) Improper Prosecutorial Closing Argument

(i) Denigration of defense experts

(ii) Denigration of mitigation

(2) Failure to request jury instruction on victim impact evidence

(3) Inconsistent defense mental health experts

E. Gonzalez cannot be executed because he is insane.

## FIRST PETITION,TIME-BARRED

Gonzalez' conviction became final on August 8, 2001.[4] Three Hundred Forty-Five (345) days elapsed before Gonzalez filed his "shell" Motion for Post Conviction Relief on July 19, 2002. Collateral counsel filed this "shell" motion in an attempt to toll the time limits under the federal habeas statute. (Volume 40, App. P, p. 146). At that time, Gonzalez requested leave to file an amended motion to vacate. On August 13, 2002, the trial court granted the State's Motion to Strike Gonzalez' motion, due to non-compliance with the specific requirements of Rule 3.851, Fla. R. Crim. Proc. (Volume 40, App. P, p. 161).[5] If Gonzalez's "shell" motion was not properly

---

[4] Collateral counsel in 2001 apparently believed that the 90 days for filing a writ of certiorari would run from the mandate. (Volume 40, Appx P, p. 146). However, it runs from the entry of judgment. *Chavers v. Fla. Dep't of Corr.*, 468 F. 3d 1273, 1275 (11th Cir. 2006).

[5] There is some authority that the statute of limitations might have been tolled from July 19, 2002 until August 13, 2002, when the state trial court struck the motion for post-conviction relief. *Hemmerle v. Schriro*, 495 F. 3d 1069, 1075 (9th Cir. 2007). Therefore, Gonzalez would have had, at the latest, until September 3,

filed, the statute of limitations ran on August 8, 2002. If Gonzalez's request to file an amended motion to vacate tolled the statute of limitations, then the clock began to run again on August 13, 2002, when the trial court struck the "shell' motion. At that point, the one year statute of limitations ran no later than September 3, 2002. On March 10, 2003, Gonzalez filed his consolidated Amended Motion to Vacate. (Volume 40, App P, pp 187-259). If Gonzalez's July 19, 2002, Motion to Vacate was not properly filed, then the statute of limitations was not tolled, and more than one year of non-tolled time elapsed prior to Gonzalez filing his Consolidated Amended Motion to Vacate on March 10, 2003. However, the Florida Supreme Court granted Gonzalez permission to file an Amended 3.851 motion within a specific period of time. It would seem that such an order might allow the amended petition to relate back to the July 19, 2002 filing date, but only if the request had been made prior to the statute of limitations running. Here, unless the "shell motion" tolled the statute, it would appear that the one year AEDPA statute clearly ran no later than five (5) days before the trial court granted the state's Motion to Strike.[6] Alternatively, even considering that the Florida Supreme Court allowed the amendment, an amended motion would not relate back to an initial motion that itself was insufficient to toll the limitations period because it was not properly filed. *Melson v. Allen,* 548 F. 3d 993, 998 (11th Cir. 2008) *citing Sibley v. Culver*, 377 F. 3d 1196, 1204 (11th Cir. 2004). Here, as the Florida

---

2002, to file his state collateral attack. Gonzalez certified his Emergency Motion for Extension of Time to File his Motion for Post Conviction Relief on September 5, 2002. It was received by the Attorney General's Office on September 9, 2002. (Volume 45, Appx. V). On October 11, 2002, the Florida Supreme Court granted the emergency motion (Volume 45, Appx. W). On January 30, 2003, the Florida Supreme Court granted additional time, until March 10, 2003, to file the collateral attack. (Volume 45, Appx. Y). However, tolling does not operate to revive an expired limitations period. *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir.) *reh'g denied*, 67 Fed. App'x 585 (11th Cir. 2003).

[6] Moreover, it does not appear that Gonzalez had asked the Florida Supreme Court for permission to file an amended motion to vacate prior to September 3, 2002, which is when the statute of limitations ran, if the dates of July 19, 2002 - August 13, 2002 are tolled.

Supreme Court noted, Gonzalez's motion was a true shell motion, filed simply to comply with the time limitations. *Gonzalez*, 990 So. 2d at 1034 n. 9. Gonzalez's one year statute of limitations under AEDPA ran, at the latest, on September 3, 2002, before he asked the Florida Supreme Court for permission to file an amended motion to vacate. Under the most liberal construction to Gonzalez, three hundred eighty-eight (388) days of non-tolled time elapsed prior to Gonzalez's filing this federal petition on October 20, 2008. Alternatively, in his Reply, Gonzalez contended he is entitled to equitable tolling of the statute of limitations. Gonzalez's conclusory allegations about extraordinary circumstances beyond his control were insufficient to warrant equitable tolling or even a hearing to consider that remedy. Moreover, that remedy should be sparingly applied. Even gross negligence[7] of post conviction counsel is not a basis for equitably tolling the AEDPA one year statute of limitations. Here, there are no allegations of bad faith, dishonesty, divided loyalty or mental impairment on behalf of post conviction counsel. *Holland v. Florida*, 539 F. 3d 1334, 1339 (11th Cir. 2008), *pet. for cert. filed* (May 13, 2009). The fact that the attorney who recommended the filing of a "shell" motion had previously been an Attorney General prosecuting death penalty cases, does not rise to the level of a divided loyalty, nor did it warrant an evidentiary hearing. There is no allegation of affirmative misrepresentations. *Id.* n. 9; *Hammond v. Frazier*, 275 Fed. App'x 896 (11th Cir. 2008). An attorney's miscalculation of the limitations does not warrant any relief under the facts of this case, particularly where prisoners have no constitutional right to counsel. *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991). A state's effort to assist prisoners in post conviction proceedings does not make the state accountable for a prisoner's delay in filing. *Downs v. McNeil*, 520 F. 3d 1311, 1320 n. 6 (11th Cir.

[7] Certainly, collateral counsel must have been aware of the principle that a state court petition, filed after the expiration of the limitations period, cannot toll the period, as there would be no period remaining to be tolled. *Webster v. Moore*, 199 F. 3d 1256, 1259 (11th Cir. 2000), *see also Alexander v. Sec'y D.O.C.,* 523 F. 3d 1291, 1294 (11th Cir. 2008) period does not warrant equitable tolling. *Lawrence v. Florida,* 549 U.S. 327, 336 (2007).

2008). Ordinary attorney negligence, like miscalculating a deadline, does not warrant equitable tolling. Id. at 1325; *McMillan v. Sec'y for D.O.C.,* 257 Fed. Appx. 249, 253 n.12 (11th Cir. 2007); *Melendez v. Sec'y for D.O.C.*, 247 Fed. Appx. 188, 189 (11th Cir. 2007). Moreover, mailing mistakes do not warrant equitable tolling. *Sandvik v. U.S.*, 177 F. 3d 1269,1271 (11th Cir. 1999) *reh'g denied*, 207 F.3d 666 (11th Cir. 2000); *Wainwright v. Sec'y, D.O.C.,* 537 F. 3d 1282, 1286 (11th Cir. 2007). This petition was time-barred. Finally, there was no allegation that Gonzalez is actually innocent.

15. This court attempted to address alternatively, Gonzalez's other claims. *Clisby v. Jones,* 960 F. 2d 925, 936 (11th Cir. 1992).

**MERITS IN FIRST PETITION**

16. First, Gonzalez complained that it was error to admit Leonardo Franqui's and Pablo San Martin's confessions in a joint trial. Gonzalez moved for a severance on April 14, 1994. (Volume 5, Appx. N, pp. 110-112). On May 12, 1994, the State filed a Response in Opposition to the Severance Motions (Volume 5, Appx. N., p. 133-141). On May 19, 1994, the trial court found that the confessions of Franqui, San Martin and Gonzalez were indistinguishable from each other as to the material aspects of the case. (Volume 6, Appx. N, pp. 215-221]. On September 18, 1997, the Florida Supreme Court found that the admission of Franqui's and San Martin's confessions in the guilt phase was harmless error. *Gonzalez v. State*, 700 So. 2d 1217, 1219 (Fla.1997). Two justices dissented on this issue. The Florida Supreme Court found the error to be harmless beyond a reasonable doubt because: Gonzalez confessed to participating in the robbery and shooting the victim; the fatal bullet came from Gonzalez's gun; Gonzalez admitted to being with Franqui, who was identified as the driver of one of the stolen cars leaving the scene of the crime; and

Gonzalez consented to a search of his apartment where $1200 of the stolen money was found. In co-defendant San Martin's appeal, the Florida Supreme Court related the following facts:

> The record reflects that the Kislak National Bank in North Miami, Florida, was robbed by four gunmen on January 3, 1992. The perpetrators drove away in two stolen grey Chevrolet Caprice cars after taking a cash box from one of the drive-in tellers. During the robbery, police officer Steven Bauer was shot and killed. Shortly, after the robbery, the vehicles were found abandoned two blocks west of the bank.
>
> Approximately two weeks later, co-defendant Gonzalez was stopped by the police after leaving his residence on January 18, 1992. Gonzalez subsequently made unrecorded and recorded confessions in which he told police that Franqui had planned the robbery, recruited the other participants, and chosen the location and date for the crime. Gonzalez also stated that Franqui had procured the two stolen Chevrolets, driven one of the cars, and supplied him with the gun he used during the robbery. Gonzalez further stated that Franqui was the first shooter and had fired at the victim three or four times, while Gonzalez had shot only once. Gonzalez stated that he had shot low and believed that he had only wounded the victim in the leg. During a subsequent re-interview, Gonzalez described how Franqui had shouted at the victim not to move before shooting him.
>
> San Martin and Franqui, who were being held on other charges, were taken from the Dade County Jail to the Homicide Headquarters on January 18, 1992. They were questioned separately about their involvement in the Bauer killing and another attempted robbery in Hialeah where Raul Lopez was killed. After a detective told San Martin that co-defendant Fernandez had implicated him in the Bauer case, San Martin told the detective that Gonzalez, Fernandez, Franqui, and Abreu were also involved, with Abreu driving a getaway car parked several blocks away from the bank. San Martin could not say who carried guns or did the shooting. He admitted that he took the money tray. During a January 21, 1992, interview with a Hialeah detective investigating the Lopez killing, San Martin also drew a diagram detailing where the weapons could be found, but he refused to sign the drawing.
>
>> FN2. At the time that the detective questioned San Martin about the weapons, the police did not know that the same weapons had been used in both the Lopez

> and Bauer incidents. The police learned that the weapons were used in the Bauer shooting only after the weapons were recovered and ballistic tests were conducted.

Franqui initially denied any involvement in the crimes, but confessed after a detective told him that the others were in custody and naming him as a participant. He recounted essentially the same story as the others. He also stated that only he and Gonzalez were armed. He stated that Gonzalez yelled "freeze" to Bauer after they saw his weapon. He denied firing the first shot and admitted firing only one shot.

The co-defendants filed pretrial motions to suppress their confessions and to sever their trials. San Martin's motion to sever was based upon the co-defendants' statements that incriminated him. San Martin requested either a severance from the other defendants or that their statements be excluded. He also filed a motion to suppress his own confession on the basis that it was obtained in violation of his right to counsel and privilege against self-incrimination, and that it was not freely and voluntarily given.
After hearings on the various motions, the court denied all of the co-defendants' motions, with the exception of Fernandez's motion to sever his trial. Dual juries were selected, with Jury A hearing Fernandez's case and Jury B rendering a guilty verdict on San Martin, Franqui and Gonzalez. San Martin, 717 So. 2d at 465

According to the Florida Supreme Court, Franqui and San Martin's confessions were as follows:

FN2. San Martin also made a confession to police, in which he stated that the robbery was planned by a black friend of the co-defendant Fernandez and that the planning occurred at Fernandez's apartment. San Martin admitted that he had grabbed the money tray during the robbery, but could not say who carried guns or did the shooting.

> Franqui was also questioned by police on January 18, 1992, in a series of unrecorded and recorded sessions. During his pre-interview, Franqui initially denied any involvement in the Kislak Bank robbery, but when confronted with the fact that his

> accomplices were in custody and had implicated him, he ultimately confessed. Franqui stated that Fernandez had hatched the idea for the robbery after talking to a black male, and he had accompanied the two men to the bank a week before the robbery actually took place. He maintained that the black male friend of Fernandez had suggested the use of the two stolen cars, but denied any involvement in the thefts of the vehicles. According to Franqui, San Martin, Fernandez, and Abreu had stolen the vehicles. Franqui did admit to police that he and Gonzalez were armed during the episode, but stated that it was Gonzalez and not himself who yelled at the victim to "freeze" when they saw him pulling out his gun. Franqui denied firing the first shot and maintained that he fired only one shot later.
>
> *Gonzalez*, 700 So. 2d at 1218.

Assessing any error in the context of the entire case, the Florida Supreme Court did not err in applying the harmless error test. *Spears v. Mullin*, 343 F. 3d 1215, 1232-34 (10th Cir. 2003*) cert. denied*, 541 U.S. 909 (2004). The Florida Supreme Court's decision[8] that the confessions were reliable was neither "contrary to" nor an "unreasonable application of" governing United States Supreme Court case law. *Grossman v. McDonough,* 466 F. 3d 1325, 1340 n. 12 (11th Cir. 2006) *cert. denied,* 550 U.S. 958 (2007). It did not have a "substantial and injurious effect or influence in determining the jury's verdict. *Grossman*, 466 F. 3d at 1339 *citing Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).[9]

17. Second, Gonzalez contended that it was error to deny his peremptory challenges against jurors Auerlio Diaz and Adriana Adani.

A. Mr. Diaz was 51 years old and lived in the Westchester Area. (Volume

---

[8] After re-sentencing, Gonzalez again unsuccessfully raised the admissibility of the co-defendant confessions before the Florida Supreme Court. *Gonzalez v. State*, 786 So. 2d 559, 564 n. 2 (Fla. 2001).

[9] On April 20, 2009, U.S. District Judge Michael Moore denied Franqui's habeas petition agreeing with the Florida Supreme Court that the admission of the co-defendants' confessions was harmless error. [DE-26 in 07-22384-CIV]. Franqui's appeal was pending before the Eleventh Circuit (Case No.08-16389 and 09-12626).

11, Appx. N, p. 429]. He had immigrated from Cuba at 19. (Volume 12, Appx N, p. 254-55). He has been in Dade County for 27 years and was employed as a chief of maintenance for the County. (Volume 11, Appx. N, pp. 420-30). He had two daughters, a clerk typist and an after school program supervisor, who had never given him any trouble. (Volume 12, Appx. N, p. 756). He had served on a civil jury before. He had no experience with police officers, being arrested or the victim of a crime, owning a gun or serving in the military. He had no problems with the death penalty, and he could be fair. (Volume 11, Appx. N, pp. 430-431). Juror Diaz indicated that he could follow the law. (Volume 11, Appx. N, pp. 546, 578-79) (Volume. 12, Appx. N, p. 698, 752-55). Gonzalez's trial counsel attempted to strike Diaz because he didn't like him. (Volume 12, Appx. N, p. 793). The trial court disallowed the challenge. The objection was later renewed and denied. (Volume 13, Appx. N, p. 824).

B. Juror Adriana Andani was 29 years old and lived all of her life in Dade County, currently in Pine Crest. She was single and had no experience with jury duty, police officers, being arrested, owning a firearm or serving in the military. (Volume 11, Appx. N, p. 441). Her car had been stolen three years earlier by a twelve (12) year old juvenile. She could be fair. (Volume 11, Appx. N, p. 442). She could follow the law. (Volume 11, Appx. N., pp. 534-35, 547, 569, 575) (Volume 12, Appx. N, pp. 619, 664-65, 767-769). Gonzalez attempted to exercise a peremptory challenge against Andani (Volume 12, Appx. N, p. 787). When the state objected, Gonzalez's counsel proffered that she loved the prosecutor; she was hesitant; she made no eye contact with him, that she had developed an affinity with the prosecutor, and that she

looked toward the prosecution table. Id at 788. The Court commented that the law in the area was outrageous, that peremptory challenges no longer existed and that neutral reasons must be given. Id at 789. However, the Court made none of the observations that defense counsel had relied on. Co-counsel also proffered another reason to strike Andani, it was denied. Id. at 790.

C. The Florida Supreme Court held that the trial court had not abused its discretion in denying the peremptory challenges. *Gonzalez v. State,* 700 So. 2d 1217, 1218 (Fla.1997) *citing Franqui v. State*, 690 So. 2d 1332 (Fla. 1997). Whether this Court would have sustained the objection to the defendant's peremptory strike is not germane to this petition.[10] The trial judge was in the best position to ascertain the demeanor of Gonzalez's trial attorney in an effort to determine discriminatory intent. *Snyder v. Lousiana,* 128 S. Ct. 1203, 1208 (2008). The trial court is in the best position to evaluate the lawyer's credibility. *U.S. v. Maxwell*, 473 F. 3d868, 872 (8th Cir.) *cert. denied*, 550 U.S. 952 (2007).

D. Criminal defendants are prohibited from using peremptory challenges to engage in purposeful discrimination on the basis of race, *Georgia v. McCollum*, 505 U.S. 42, 59 (1992) or gender, *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127 (1994). However, peremptory challenges are not constitutionally protected fundamental rights. *McCollum*, 505 U.S. at 57; *U.S .v. Allen-Brown,* 243 F. 3d 1293, 1299 (11th Cir.) cert. denied, 534 U.S. 1010 (2001); *Garcia v .Graham*, 2008 2949383*7 (E.D.N.Y. July 31, 2008); *Brown v. McKee*, 2009 WL 331601*5(E.D. Mich. Feb. 11, 2009); *Haywood v. Portuando*, 288 F. Supp. 2d 446, 463 (S.D.N.Y. 2003).

---

[10] Body language and demeanor can be appropriate non-discriminatory reasons to strike jurors. *U.S. v. Davidson*, 449 F. 3d 849, 852-53 (8th Cir.) *cert. denied*, 549 U.S. 1044 (2006).

Here, there was no constitutional violation. *Rivera v. Illinois*, 129 S. Ct. 1446, 1454 (2009). Judge Moore denied a similar complaint in Leonardo Franqui's habeas petition. [DE-12, pp. 31-33 in 07-22384CV]. Finally, no error has been shown where no biased juror sat on the case. Third, Gonzalez complained that trial counsel was ineffective in not objecting to the prosecutor's opening statement that the victim was a good natured guy, (Volume 13, Appx. N, p. 873), that people liked him (Volume 13, Appx. N., p. 873) and that bullets ripped through his body, exploding his heart. (Volume 13, Appx. N. p. 878). These comments in opening statement were not improper; they were accurate and not inflammatory. Any objection would have been overruled. In fact, objections were overruled. (Volume 13, Appx. N, pp. 858-59, 866-67). Finally, there is no prejudice where the jury was instructed that the statements of the attorneys were not evidence. (Volume 13, Appx. N., p. 870; Volume 18, Appx. N, p. 1988). U.S. v. Campbell, 317 F. 3d 597, 607 (6th Cir. 2003). The Florida Supreme Court decided that the comments were not improper. *Gonzalez v. State*, 990 So. 2d 1017, 1025 (Fla. 2008). The statements were later supported by the evidence. Id. at n. 5. This Court agrees. Finally, Gonzalez was represented by experienced trial counsel. There is a strong presumption that counsel's conduct was proper. *Stewart v. Sec'y for D.O.C.,* 476 F. 3d 1193, 1209 (11th Cir. 2007). The co-defendants also were represented by experienced counsel: Eric Cohen for Leonardo Franqui and Louis Casuso for Pablo San Martin, and they also had the same strategy during opening statements.

18. Fourth, Gonzalez contended trial counsel should have objected to teller LaSonya Hadley's relationship with the victim[11] or that the victim was singing a little song,

---

[11] She testified that it was a great relationship. He was the kind of person that you can talk to; he was funny. He was a jokester. He made Fridays fun to work, because it was such a long day. (Volume 13, Appx.

"Jesus, Jesus, it's going to be a busy day for you guys." (Volume 13, Appx. N, p. 939). The state conceded that this testimony was objectionable. [DE-4, p. 76]. The Florida Supreme Court concluded that Gonzalez was not prejudiced because of the benign nature of the testimony. Gonzalez, 990 So. 2d at 1025. Moreover, counsel for co-defendant Fernandez, Ron Guralnick, had unsuccessfully moved for a mistrial earlier because of the Christian song, but it had been denied. (Volume 13, Appx. N, p. 858-59). Finally, the Court concludes that, if the comments were objectionable, they did not affect the outcome of the case.

19. Fifth, Gonzalez contended that trial counsel should have called Detective La Porte to testify about an inoperable gun found blocks away from the bank. Trial counsel attempted to elicit the testimony during cross-examination, but the state's objection was sustained. (Volume 14, Appx. p. 1070). Trial counsel indicated that he might call the witnesses on the defense side of the case. (Volume 14, Appx N. p. 1084). However, trial counsel rested, without calling any witnesses. (Volume 18, Appx. N. p. 1930]. By not calling any witnesses, trial counsel was able to secure a rebuttal closing argument after the state's closing.[12] Counsel cannot be faulted for utilizing such a strategy. *Dingle v. Sec'y D.O.C.,* 480 F. 3d 1092, 1100 (11th Cir.) *cert. denied*, 128 S. Ct. 530 (2007). Finally, Gonzalez has not shown how this inoperable gun would have affected the verdict in this case. The police recovered two guns from a location in a river, as described

---

p. 936).

[12] Effective May 3, 2007, the rule has now changed in Florida so that a prosecutor now enjoys the final closing argument in all non-capital cases. *In re: Amendments*, 957 So. 2d 1164 (Fla. 2007).

by co-defendant San Martin. (Volume 17 Appx. N, p. 1759; Volume 18, Appx. N, p. 1806). Those guns were matched ballistically to the murder scene. (Volume 18, Appx. N, pp. 1881-1886). No error has been shown. The Florida Supreme Court concluded that there was no prejudice to Gonzalez. Gonzalez, 990 So. 2d at 1025. This Court agrees.

20. Sixth, Gonzalez contended that counsel at his re-sentencing was ineffective for failing to object both to the trial court's comments about the weighing process (Volume. 29, Appx. O, p. 26, Volume 32, Appx. O, p. 790) and to the prosecutor's comments (Volume 31, Appx. O, p. 537). The Florida Supreme Court found these comments to be isolated and did not undermine confidence in the outcome, particularly since proper standard instructions were later given to the jury. *Gonzalez*, 990 So. 2d at 1026-27. This Court agrees: the re-sentencing lasted four (4) days, and the transcript is more than 1800 pages long. These isolated comments did not affect the verdict. *Johnson v. Alabama*, 256 F. 3d 1156, 1185 (11th Cir. 2001) *cert. denied*, 535 U. S. 926 (2002).

21.Seventh, Gonzalez complained about comments diluting the jury's responsibility in the sentencing process.

A. Gonzalez complained that the trial court told the jury that their role was merely advisory:

> You do not sentence the Defendant.
> I am the person who ultimately imposes the sentence.
> What you do is make a recommendation to me as to what the sentence should be… But I want to emphasize to you, although my decision may be different from your recommendation, I must give your recommendation great weight. And it's only under unusual circumstances that I would give a sentence that is different from your recommendation. So your recommendation is extremely important to me.

> (Volume 29, Appx. O, pp. 27-28).

Later the trial court told the selected jury:

> Now, it's my responsibility to decide which laws apply to this case. And it is your responsibility to determine
> the facts that are going to be presented during this hearing. You and I have totally separate responsibilities. (Volume 33, Appx. O, p. 922).

In his final instructions, the trial court told the jury:

> The final decision as to what punishment shall be imposed is the responsibility of the judge, however, it is your duty to follow the law that will now be given to you by the court and render to the court an advisory sentence....... (Volume 38, Appx. O, p. 1828).

B. Gonzalez complained that the prosecutor misspoke during voir dire when he told the jury that the judge would make the final decision in the case. (Volume 29, Appx. O, p. 803). However, the prosecutor also told the jury that the Judge had to give their recommendation "great weight or importance". Id.

C. Gonzalez complained that the verdict should not have been labeled "Advisory Sentence." (Volume 37, Appx. O, p. 1663).

The Florida Supreme Court agreed with the state trial judge that counsel had not been ineffective in that the statements were accurate and consistent with the existing law. Gonzalez, 990 So. 2d at 1027. This Court agrees.

22.Eighth, Gonzalez complained that counsel's failure to object to jury instructions on the burden of proof. Gonzalez pointed to the final instructions that told the jury that they should determine "whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist." (Volume 38, Appx. O, p. 1828). The Florida Supreme

Court

found no fault with the instructions on the burden of proof. *Gonzalez*, 990 So. 2d at 1027. This Court agrees.

23.Ninth, Gonzalez contended trial counsel should have objected to victim impact evidence at re-sentencing.

A. LaSonya Hadley testified that she saw the victim at weddings, basketball games and community events. She considered the victim a friend, knew his wife and children, ate lunch with him, considered him funny and her favorite officer who worked at the bank. (Volume 33, Appx. O, pp. 957-959).

B. Michelle Watson testified that the victim was friendly, sweet and nice. He had a good sense of humor and would tease her. (Volume 33, Appx. O, pp. 982-983).

C. Trial counsel failed to request a limiting instruction on the "victim impact" evidence. The Florida Supreme Court found that the evidence was properly elicited to demonstrate the victim's uniqueness as a human being. *Gonzalez*, 990 So. 2d 1017, 1027-28 (Fla. 2008). Fla. Statute 921.141(7) provides for the introduction of victim impact evidence at the penalty phase, if at least one aggravator has been shown. Cole v. Crosby, 2006 WL 1169536*9 (M.D. Fla. May 3, 2006). Moreover, the Florida Supreme Court did not fault re-sentencing counsel for not requesting a special instruction. Id. at 1028. This

Court agrees.

24. Tenth, Gonzalez complained about the prosecutor's closing argument and counsel's failure to object or to adequately object:

A. The prosecutor mocked and criticized a defense expert as a hired gun who had just accepted Gonzalez's excuse for committing the crime. (Volume 38, Appx. O, p. 1779).

B. The prosecutor said that the instructions had nothing to do with the case, but the objection was just to the form of the argument.

C. The prosecutor called defense experts Dr. Eisenstein and Dr. Fisher gullible. (Volume 37, Appx. O, p. 1751).

D. The prosecutor referred to the victim's badge. (Volume 37, Appx. O, pp. 1746-49).

E. The prosecutor used a quote from George Bernard Shaw. (Volume 37, Appx. O, p. 1798).

F. The prosecutor quoted the victim, after being shot, as asking if the other people were okay. (Volume 37, Appx., p. 1799).

G. The prosecutor told the jury that it was their responsibility, "based upon all the evidence on this case", to return a recommendation for the death penalty. (Volume 37, Appx. O, p. 1756).

The Florida Supreme Court recognized that the prosecutor was emphasizing that the victim was a police officer, killed while performing his duties. *Gonzalez*, 990 So. 2d at 1029. This was a proper argument. *Jones v. Dugger*, 928 F. 2d 1020, 1029 (11th Cir.) *cert. denied*, 502 U.S. 875

(1991). Moreover, the Florida Supreme Court found the George Bernard Shaw quote, when read in its context, to be proper. The "are you okay? comment was a proper review of the evidence.

Finally, the request to return a death recommendation, when coupled with the key phrase "based upon all the evidence in this case," was not improper. *Gonzalez*, 990 So. 2d at 1029; *U.S. vith,* 441 F. 3d 254, 264 (4th Cir.) *cert. denied*, 549 U.S. 903 (2006). This Court agrees; none of the comments so affected the trial so as to render it unfair.

25.Eleventh, Gonzalez complained that trial counsel failed to request a jury instruction on victim impact evidence. As indicated above in paragraph 24(c), such a failure does not equate to ineffectiveness. <u>See</u>, *Elliott v. Kelly*, 2009 WL 855796*19 (E.D. Va. March 31, 2009).

26.Twelfth, Gonzalez complained that trial counsel, at re-sentencing, called defense mental health experts that contradicted each other. Gonzalez concludes that just Dr. Eisenstein should have been called. The trial court held an evidentiary hearing on this issue. The Florida Supreme Court found that Dr. Eisenstein's lack of credibility was not based on contradictory opinions from other defense experts, but was due to other aspects of the record: defendant's lies, defendant's confession, defendant's holding different jobs. Moreover, Dr. Wagshul and Dr. Fisher testified to other mitigating factors. The Florida Supreme Court concluded that counsel's strategic decision could not be deemed ineffective. *Gonzalez*, 990 So. 2d at 1030-31. Here, counsel felt that they had come within one vote in the first trial of getting a life recommendation and that they should again put on multiple mental health experts in the re-sentencing in an attempt to achieve that life recommendation. [Volume 42, Appx. P, p. 556]. Counsel further testified that when a police officer is killed, it is better to

have all the mitigation that can be mustered. [Volume 42, Appx. P, p. 557]. This Court agreed that this strategy was not ineffective. Moreover, re-sentencing counsel, Bruce Fleischer, was an experienced criminal defense attorney, who had been a public defender, practiced criminal defense for over twenty (20) years, and handled 75-100 homicide cases. (Volume 42, Appx. P, pp. 551-52,564). As an experienced trial counsel, there is a strong presumption that his conduct was reasonable. *Stewart v. Sec'y for D.O.C.*, 476 F. 3d 1193, 1200 (11th Cir. 2007). At the re-sentencing, he was assisted by Remberto Diaz, who had practiced mostly criminal law for almost twenty (20) years and had handled forty (40) capital cases. (Volume 42, Appx. P, pp. 592-95).

27.Thirteenth, Gonzalez contended that he is insane and cannot be executed. Gonzalez has conceded that this claim was not ripe, and the Florida Supreme Court agreed. Gonzalez, 990 So. 2d 1035. This Court agreed. No execution date had been set; the issue was not ripe. *Shisinday v. Quarterman*, 511 F. 3d 514, 521-22 (5th Cir. 2007) cert. denied, 129 S. Ct. 62 (2008).

28. On September 28, 2009 Gonzalez's Petition For Writ of Habeas Corpus [DE-1] was Dismissed as time-barred. His request for additional time to file a reply was Denied. [DE-15].

29. His request for an evidentiary hearing was Denied. Even if Gonzalez's factual allegations were proven, he would not be entitled to any relief; no evidentiary hearing was necessary. *Breedlove v. Moore*, 279 F. 3d 952, 964 (11th Cir. 2002) *cert. denied*, 537 U.S. 1204 (2003). Additionally, Gonzalez's allegations did not establish circumstances so extraordinary, conduct so diligent, and misconduct so far outside his control, so as to merit an evidentiary hearing on equitable tolling. Downs, 520 F. 3d at 1325.

30. On January 3, 2011, the Eleventh Circuit affirmed. *Gonzalez v. Sec'y D.O.C.,* 629 F.

3 1219 (11th Cir 2011). Rehearing was denied on March 25, 2011. *Gonalez v. Sec'y D.O.C.,* 429 Fed Appx. 963 (11th Cir. 2008). The U.S. Supreme Court denied certiorari on October 31, 2011. *Gonzalez v. Tucker*, 565 U.S. 982 (2011).

**SUCCESSIVE STATE PETITIONS**

31. On March 23, 2018, the Florida Supreme Court affirmed the denial of a collateral attack on a non-unanimous verdict. *Gonzalez v. State*, 240 So. 3d 629 (Fla. 2018). The U.S. Supreme Court denied certiorari on October 1, 2018. *Gonzalez v. Florida*, 586 U.S. 868 (2018).

32. In unsigned motions dated October 7, 2025, with a signature line for Phillip Robert Horowitz, Esquire, Gonzalez forwarded a Motion for Production or Records and a Successive Motion for Post Conviction Relief (Newly Discovered Evidence). Horowitz, a capable and experienced criminal defense attorney, told the state court judge that he did not represent Gonzalez in state court, and Jeffrey Feiler did not adopt the motions. On January 9, 2026, the motions were struck as nullities. Gonzalez has been aware of the perceived absence of counsel since his "*pro se*" discovery motions and successive collateral attack were dismissed over 10 months ago. *See, Woods v. Warden,* 952 F. 3d 1251, 1256 (11th Cir. 2020).

**DEATH WARRANT PROCEDURE**

33. On October 30, 2026, Governor Ron DeSantis signed a death warrant and set the week of December 1-8, 2026 for the execution, which is currently set for December 1, 2026 at 6:00 PM.

34. On November 5, 2026, the state court judge denied requests for public records.

35. On November 8, 2026, Gonzalez filed a Motion for Stay of Execution and a Successive Motion for Post Conviction relief in state court. State responses were filed on November 10, 2026; a *Huff* hearing was held . Judge Hernandez denied the stay and motion to vacate on November 13, 2026. Five issues were raised in the motion to vacate: lethal injection

protocol is unconstitutional; post-warrant request procedures are unconstitutional; execution would be unconstitutional because Gonzalez lacks extreme culpability; 8-4 jury recommendation is unconstitutional; and execution unconstitutional based upon intellectual disability. The issues were denied as being untimely, procedurally barred and, alternatively, on the merits.

36. On November 13, 2026, Gonzalez filed an appeal in the Florida Supreme Court; an answer was filed on November 17, 2026; a reply was filed on November 18, 2026. On November 18, 2026, an Emergency Motion for Psychological Testing was denied in the state trial court. On November 20, 2026, the state filed Executive Order Number 26-235, dissolving a Stay of Execution and ordering that the death warrant issued and execution again be scheduled for December 1, 2026 at 6:00 P.M. to be in full force and effect [DE-42, pp. 35-36]. The Executive Order attached a report from three psychiatrists, finding that Gonzalez has no current mental illness, has no intellectual disability and understands the nature and effect of the death penalty and why it is to be imposed on him. Petitioner's counsel alleged that another expert evaluated Gonzalez on November 20, 2026 [DE-42, pp. 38-40]. The issue of appointing another expert is currently pending in state court, where defense counsel is indicating that he needs more time to evaluate Gonzalez's competency and is requesting a stay from the state judge. [DE-45]

37. On November 13, 2026, Gonzalez also filed a Petition for Habeas Corpus in the Florida Supreme Court. A response was filed on November 17, 2026, and a reply was filed on November 18, 2026. There were ten claims, some with subparts. Gonzalez's habeas petition raises ten numbered claims with several subclaims: (1) appellate counsel rendered ineffective assistance of counsel by failing to challenge the denial of a jury instruction on his alleged lack of intent as a mitigating factor during resentencing and by failing to raise a challenge to Florida's capital sentencing scheme; (2) a stand-alone Eighth Amendment violation based on the trial court's failure

to provide a jury instruction on Gonzalez's alleged lack of intent as mitigation; (3) his prolonged stay on death row violates the Eighth Amendment; (4) Sixth and Eighth Amendment violations based on the non-unanimous jury recommendation of death; (5) the 32-day warrant schedule denied him meaningful representation and violates the Sixth, Eight, Fourteenth Amendments and the Florida Constitution; (6) executing him would violate the Eighth and Fourteenth Amendments because he is intellectually disabled; (7) executing him would violate the Eighth and Fourteenth Amendments because he has not been evaluated recently and may be incompetent; (8) a due process violation and access-to-courts claim based on the denial of his post-warrant public records requests to the Florida Department of Corrections [FDOC}; (9) a facial and as-applied challenge to Florida's lethal injection protocol; and (10) executing him is unconstitutional because he lacks culpability based on his age at the time of the crime, brain damage, and intellectual disability. Also pending before the Florida Supreme Court is an appeal of the trial court's denial of Gonzalez's successive motion for post conviction relief.

38. Again, as mentioned, a death warrant has been issued, and Gonzalez seeks a stay. The state and victims of a crime have an important interest in the timely enforcement of a sentence. *Crowe v. Donald,* 528 F.3d 1290 (11th Cir. 2008). Before entering a stay of execution, the court must consider: the likelihood of success on the merits, the relative harm to the parties, and the extent to which the inmate has delayed unnecessarily in bringing the claim. There is a strong, equitable presumption against a stay where claims could have been brought at such time as to have allowed consideration of the merits without requiring the entry of a stay. *Long v. Sec'y, D.O.C.,* 924 F. 3d 1171 (11th Cir 2019). There is no likelihood of success on the merits of what would be a successive federal habeas petition, for which Gonzalez would have needed permission from the Eleventh Circuit to file for this Court to have jurisdiction. For example, some claims could have

been brought after *Martinez v. Ryan,* 566 U.S. 1 (2012). *See, Rhoades v. Blades,* 661 F. 3d 1202 (9th Cir 2011). A stay is an equitable remedy, not a matter of right. *Gore v. Crews,* 720 F. 3d 811 (11th Cir 2013). Here, this case has spanned over three decades. *See, Bible v. Schriro,* 651 F. 3d 1060 (9th Cir 2011). It has remained final and dormant for fourteen years. None of the four equitable factors favor a stay. Alternatively, the Court accepts that it has jurisdiction to grant a stay of up to ninety days where counsel is appointed 28 USC 2251(a)(3). Here, co-counsel was appointed[13]. Nevertheless, the statute is permissive, *Sanchez v. Quick,* 2023 WL 6128099 *7 (10th Cir 2023), and this Court exercises discretion to deny the stay.

Wherefore, the motion to stay [DE-36] is Denied. The case remains closed.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of November, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record

[13] The appointment was done, in an abundance of caution, and as co-counsel.